Jorge Alberto SANCHEZ, a/k/a
Jorge Alberto Sanchez–
Reyes, Appellant,

v.

STATE of Minnesota, Respondent.

No. A09–2195.

Supreme Court of Minnesota.

July 18, 2012.

David W. Merchant, Chief Appellate Public Defender, Sharon E. Jacks, Assistant Public Defender, Saint Paul, MN, for appellant.

Lori Swanson, Attorney General, Saint Paul, MN; and John J. Choi, Ramsey County Attorney, Mark Nathan Lystig, Assistant County Attorney, Saint Paul, MN, for respondent.

## OPINION

GILDEA, Chief Justice.

Jorge Sanchez was convicted, after a stipulated facts bench trial, of first-degree possession of a controlled substance. More than 5 years after his conviction became final, Sanchez filed this petition for postconviction relief. The postconviction court denied Sanchez's petition as untimely and meritless. The court of appeals affirmed. *Sanchez v. State*, No. A09–2195, 2010 WL 2813535, at *3–4 (Minn.App. July 20, 2010).[1] Because we conclude that Sanchez's petition was untimely, we affirm.

In August 2002, Sanchez was arrested while in possession of over 25 grams of cocaine, and the State charged him with violating Minn.Stat. § 152.021, subd. 2(1) (2010).[2] Before trial, Sanchez moved to suppress the cocaine that police recovered from him. The district court denied Sanchez's motion. Following denial of his motion to suppress, Sanchez waived his right to a jury trial, and the matter was tried to the court on stipulated facts. The court found Sanchez guilty of first-degree possession of a controlled substance in violation of Minn.Stat. § 152.021, subd. 2(1), and sentenced Sanchez to 98 months in prison. The court, however, stayed execution of the sentence pending appeal, and ordered Sanchez to return to court on March 2, 2004, to report on the status of his anticipated appeal.

When the parties returned to district court on March 2, Sanchez's trial attorney suggested that the appeal was in process but not yet perfected.[3] The court reminded Sanchez at that time that he would be able to "remain at liberty pending the outcome of" his appeal. The court said that if Sanchez was not successful in his appeal that he would be given a date by which he would have to turn himself in. At Sanchez's attorney's request, the court explained to Sanchez that Sanchez needed to keep in contact with his attorney, and that Sanchez's appeal process was ongoing. The court cautioned Sanchez that he needed to follow through with this appeal, and ordered the parties to return to court on July 6, 2004, for a further status report on the progress of the appeal.

It appears from the record that from the start of Sanchez's appeal process, Sanchez and his attorney had a troubled relationship. Specifically, Sanchez's attorney had

---

1. Sanchez's appeal was consolidated with *Miller v. State*, 816 N.W.2d 547 (Minn.2012), for oral argument.

2. Under this statute, "[a] person is guilty of a controlled substance crime in the first degree if: (1) the person unlawfully possesses one or

more mixtures of a total weight of 25 grams or more containing cocaine, heroin, or methamphetamine." Minn.Stat. § 152.021, subd. 2(1).

3. The attorney currently representing Sanchez was not involved in his trial or unperfected appeal.

problems contacting and securing payments from Sanchez. His attorney sent Sanchez a letter dated January 12, 2004, indicating that Sanchez needed to pay the attorney so that the attorney could perfect the appeal. The letter indicated that Sanchez could contact the State Public Defender's Office (SPDO) if he could not pay the attorney for his services. At some point close to the March 2, 2004 hearing, Sanchez attempted to pay his attorney with a car. But the car turned out to be stolen, and the attorney would not accept it as payment. Sanchez's attorney, nonetheless, filed a notice of appeal just before the March 2, 2004 hearing. Sanchez did not perfect his appeal, however, because he did not make proper financial arrangements to obtain the district court transcripts.[4]

The court of appeals dismissed Sanchez's appeal on April 26, 2004, based on Sanchez's failure to provide satisfactory financial arrangements for the transcripts. But the court gave Sanchez leave to file a motion to reinstate, provided that Sanchez (1) show that he had good cause for failure to timely order the transcripts, and (2) provide a completed transcript certificate showing that he had made satisfactory financial arrangements to secure the transcripts. On May 4, 2004, Sanchez moved to reinstate his appeal, and his attorney wrote a letter to the court reporter stating, "*I will pay* the $400.00 or whatever is the cost of the transcript." The court of appeals concluded that this was not a satisfactory financial arrangement, however, and on June 2, 2004, the court denied Sanchez's motion to reinstate his appeal.

On July 6, 2004, Sanchez appeared in district court as previously ordered. The record is disputed as to how much contact Sanchez and his attorney had between the March 2, 2004 hearing and the July 6, 2004 hearing, and initially his attorney did not appear for the July 6 hearing. When Sanchez appeared without his counsel, the court had staff contact his attorney. While waiting for his attorney to appear, the court told Sanchez, "[a]s I understand it, you're here to turn yourself in . . . . [Y]ou've been given time to perfect your appeal, and that ha[s] not occurred. . . ." The court then waited for Sanchez's attorney to arrive.

When his attorney arrived, Sanchez and his attorney met briefly outside of the courtroom. The content of their discussion was later contested at a postconviction evidentiary hearing. But it is undisputed that after their discussion Sanchez fled from the courthouse. After his attorney informed the district court that Sanchez was gone, and that Sanchez had not contacted him since the March 2, 2004 hearing, the court executed Sanchez's sentence and issued a bench warrant for Sanchez's arrest.

Sanchez traveled to Mexico where he remained for over 3 years. In January 2008, Sanchez was arrested at the United States–Mexico border. Sanchez was returned to Minnesota, and he contacted the SPDO in April 2008. At that time, the SPDO told Sanchez that his appeal was never perfected.

On March 19, 2009, with the assistance of the SPDO, Sanchez filed this petition for postconviction relief. Sanchez argued that he was entitled to postconviction relief because (1) his Fourth Amendment rights were violated by an unreasonable search and seizure at the time of his arrest on August 19, 2002, (2) his Sixth Amendment rights were violated by ineffective assistance of counsel on appeal, and (3) his untimely petition met the interests-of-jus-

---

4. An appeal is not perfected until an appellant makes proper financial arrangements with the court reporter to obtain the district court transcripts. *See* Minn. R.Crim. P. 28.02, subd. 9; Minn. R. Civ.App. P. 110.02, subd. 2(a).

tice exception in Minn.Stat. § 590.01, subd. 4(b)(5) (2010).

The postconviction court held an evidentiary hearing at which Sanchez testified. According to Sanchez's testimony, his attorney told Sanchez during the July 6, 2004 discussion that Sanchez had lost everything, he had attempted to contact Sanchez about the appeal, and he encouraged Sanchez to leave court. Sanchez also testified that he did not recall being contacted by his attorney in the time period between March 2 and July 6. Sanchez explained that he tried to reach his attorney in early July, but that his attorney did not respond. Sanchez also explained that his attorney called him the evening of the July 6 hearing, told him that the district court had issued a bench warrant for his arrest, and that he "should be very careful." Sanchez testified that he "got scared and [then] went to Mexico." Sanchez also told the postconviction court that he first learned that his conviction had not been appealed when he spoke with the SPDO in April 2008.

Sanchez's trial attorney also testified at the postconviction evidentiary hearing regarding his July 6 discussion with Sanchez. Counsel said that he was surprised Sanchez was at court because he "hadn't heard anything from [Sanchez] for a long time and ... assumed that [Sanchez] panicked and fled the jurisdiction." Counsel specifically denied that he told Sanchez to leave court and testified that after their conversation, Sanchez told him that Sanchez needed to use the restroom. When Sanchez never returned, counsel informed the court that Sanchez was gone, and that Sanchez had not contacted him since the March 2, 2004 hearing.

Following the evidentiary hearing, the postconviction court held that Sanchez's

Fourth and Sixth Amendment claims were meritless and that his petition was untimely. The court of appeals affirmed, holding that Sanchez's petition was untimely because his interests-of-justice claim arose on July 6, 2004, when he knew or should have known "that his appeal had been dismissed without a substantive review." *Sanchez v. State*, No. A09–2195, 2010 WL 2813535, at *3–4 (Minn.App. July 20, 2010).

On appeal to our court, Sanchez asserts three arguments. First, Sanchez argues his petition for postconviction relief is not barred by Minn.Stat. § 590.01, subd. 4 (2010). Second, Sanchez argues that if we conclude the time limits set forth in Minn. Stat. § 590.01, subd. 4, bar his petition for postconviction relief, then those time limits render section 590.01, subdivision 4 unconstitutional. Third, Sanchez argues that we should review his conviction under our inherent authority.

I.

We turn first to the question of whether Sanchez's petition for postconviction relief is barred by Minn.Stat. § 590.01, subd. 4. In 2005, the Legislature enacted Minn. Stat. § 590.01, subd. 4, adding a 2–year statute of limitations to the postconviction statute. *See* Act of June 2, 2005, ch. 136, art. 14, § 13, 2005 Minn. Laws 901, 1097– 98 (codified at Minn.Stat. § 590.01, subd. 4). The statute of limitations provides that a petition cannot be filed more than 2 years after the later of "(1) the entry of judgment of conviction or sentence if no direct appeal is filed; or (2) an appellate court's disposition of petitioner's direct appeal." Minn.Stat. § 590.01, subd. 4(a). For defendants like Sanchez, whose conviction was final before August 1, 2005, the 2–year statute of limitations expired on July 31, 2007.[5] *See* Act of June 2, 2005, ch.

---

5. There is no dispute that Sanchez's conviction became final before August 1, 2005. *See*

*Moua v. State,* 778 N.W.2d 286, 288 (Minn. 2010) (discussing finality of convictions).

136, art. 14, § 13, 2005 Minn. Laws 901, 1098; *Miles v. State*, 800 N.W.2d 778, 781 (Minn.2011). Because Sanchez did not file his petition until March 19, 2009, the 2–year statute of limitations bars his claims unless Sanchez can satisfy one of the exceptions set forth in Minn.Stat. § 590.01, subd. 4(b). Subdivision 4(b) sets forth five exceptions to the 2–year statute of limitations, including "the petitioner establishes to the satisfaction of the court that the petition is not frivolous and is in the interests of justice." Minn.Stat. § 590.01, subd. 4(b)(5). Subdivision 4(c) creates the additional requirement that a "petition invoking an exception provided in [4](b) must be filed within two years of the date the claim arises." Minn.Stat. § 590.01, subd. 4(c).

Sanchez provides us with three arguments for why we should conclude that Minn.Stat. § 590.01, subd. 4(c), does not bar his petition for postconviction relief. First, Sanchez argues that the court of appeals erred in applying the 2–year time limit in Minn.Stat. § 590.01, subd. 4(c), to the interests-of-justice exception in Minn. Stat. § 590.01, subd. 4(b)(5). Second, he argues that the court of appeals erred in concluding that a claim arises under subdivision 4(b)(5), for purposes of triggering the 2–year time limit in subdivision 4(c), when the claimant knew or should have known of the claim. Sanchez argues that we should instead apply a subjective knowledge standard to determine when his interests-of-justice claim arose and that under that standard his invocation of the interests-of-justice exception is timely under subdivision 4(c). Third, Sanchez argues that the time limitation in subdivision 4(c) should be tolled under the doctrine of equitable tolling. We consider each argument in turn.

### A.

Sanchez first contends that the court of appeals erred in applying the 2–year time limit in Minn.Stat. § 590.01, subd. 4(c), to

the interests-of-justice exception in Minn. Stat. § 590.01, subd. 4(b)(5). Sanchez argues that interpreting the exception provivions set forth in Minn.Stat. § 590.01, subd. 4(b) and 4(c) as requiring a defendant to invoke a claimed interests-of-justice exception, within 2 years of the date the claim arose, leads to an absurd result. More specifically, Sanchez argues that if subdivision 4(c) applies when, as in his case, the claim raised on postconviction relates to an error that occurred before the conviction became final, and more than 2 years have passed since the conviction became final, there can be no timely-filed petitions based on the interests-of-justice exception in subdivision 4(b)(5). Sanchez's argument is unpersuasive.

 Whether the time limit in Minn. Stat. § 590.01, subd. 4(c), applies to the interests-of-justice exception in subdivision 4(b)(5) is a question of statutory interpretation that we review de novo. *Munger v. State*, 749 N.W.2d 335, 338 (Minn.2008). Our goal in statutory interpretation is to ascertain and give effect to the Legislature's intent. Minn.Stat. § 645.16 (2010). An unambiguous statute must be construed according to its plain language. *State v. Colvin*, 645 N.W.2d 449, 452 (Minn.2002). In *Gassler v. State*, we held that "Minn.Stat. § 590.01, subd. 4, is clear and free from all ambiguity." 787 N.W.2d 575, 584 (Minn.2010). Because this statute is clear and unambiguous, its plain language controls. Minn.Stat. § 645.16.

 Subdivision 4(c) states that a "petition invoking an exception provided in [4](b) must be filed within two years of the date the claim arises." The plain language of the statute clearly and unambiguously applies the time limit in subdivision 4(c) to all of the exceptions in subdivision 4(b), including the interests-of-justice exception.[6] Indeed, in *Rickert v. State*, we held

---

**6.** Because we reaffirm that the language of

Minn.Stat. § 590.01, subd. 4, is not ambigu-

that "a petition for postconviction relief invoking an exception under subdivision 4(b) *must be filed within two years of the date the interests-of-justice claim 'arises.'*" 795 N.W.2d 236, 242 (Minn. 2011) (emphasis added).

Despite the plain language of subdivision 4(c) and our analysis in *Rickert,* Sanchez argues that we should construe subdivision 4(c) as not applying to the invocation of the interests-of-justice exception in subdivision 4(b)(5) when a petition for postconviction relief alleges that ineffective assistance of counsel precluded appellate review of errors in the trial process. In such a circumstance, Sanchez contends there is an irreconcilable conflict between subdivisions 4(b)(5) and 4(c) because if subdivision 4(c) applies when the claim raised in the petition for postconviction relief relates to an error that occurred before the conviction became final and more than 2 years have passed since the conviction became final, there can be no timely-filed petitions based on the interests-of-justice exception in subdivision 4(b)(5). We reject Sanchez's argument for two reasons.

First, Sanchez's argument regarding a conflict between subdivision 4(c) and subdivision 4(b)(5) incorrectly equates the substance of a postconviction petition with the establishment of the interests-of-justice exception. The argument relies on the erroneous premise that the invocation of the interests-of-justice exception in subdivision 4(b)(5) may be based on the substantive merit of the claim raised in the petition for postconviction relief. But as we made clear in *Rickert* and *Gassler,*

the interests-of-justice referred to in subdivision 4(b)(5) relate to the *reason* the petition was filed after the 2–year time limit in subdivision 4(a), not the *substantive claims* in the petition. *See Rickert,* 795 N.W.2d at 242; *Gassler,* 787 N.W.2d at 582. In other words, the interests-of-justice exception is triggered by an injustice that *caused* the petitioner to miss the primary deadline in subdivision 4(a), not the *substance* of the petition. When the only injustice claimed is identical to the substance of the petition, and the substance of the petition is based on something that happened before or at the time a conviction became final, the injustice simply cannot have caused the petitioner to miss the 2–year time limit in subdivision 4(a), and therefore is not the type of injustice contemplated by the interests-of-justice exception in subdivision 4(b)(5). Consequently, there is no conflict between subdivisions 4(b)(5) and 4(c).[7]

Second, Sanchez in effect is asking us to overrule *Rickert,* which stands for the proposition that the 2–year time limit in subdivision 4(c) applies to all of the subdivision 4(b) exceptions. *See Rickert,* 795 N.W.2d at 242. We are not inclined to overrule *Rickert,* especially when Sanchez has not articulated a compelling reason for us to do so. *See State v. Martin,* 773 N.W.2d 89, 98 (Minn.2009) (explaining that "[w]e are 'extremely reluctant to overrule our precedent under principles of *stare decisis*'" (quoting *State v. Lee,* 706 N.W.2d 491, 494 (Minn.2005))).

In sum, we reaffirm our decision in *Rickert,* and hold that the 2–year time limit in

---

ous, we reject Sanchez's invitation to examine the legislative history of subdivision 4. *See Laase v. 2007 Chevrolet Tahoe,* 776 N.W.2d 431, 435 n. 2 (Minn.2009) (explaining that we do not resort to legislative history in the absence of a conclusion that the relevant statute is ambiguous).

**7.** Because we conclude that there is no conflict between subdivision 4(b)(5) and subdivision 4(c), we need not address Sanchez's argument that the conflict should be resolved in favor of subdivision 4(b)(5), because subdivision 4(b)(5) is the more specific provision. *See* Minn.Stat. § 645.26 (2010).

Minn.Stat. § 590.01, subd. 4(c), applies to Sanchez's subdivision 4(b)(5) interests-of-justice claim. Consequently, we hold that the court of appeals properly applied the 2–year time limit in Minn.Stat. § 590.01, subd. 4(c), to Sanchez's invocation of the interests-of-justice exception in Minn.Stat. § 590.01, subd. 4(b)(5).

### B.

■ Having reaffirmed that the 2–year time limit in Minn.Stat. § 590.01, subd. 4(c), applies to the interests-of-justice exception in subdivision 4(b)(5), we must now decide when an interests-of-justice claim asserted under subdivision 4(b)(5) arises. Put differently, we must decide when the 2–year time limit in subdivision 4(c) begins to run. This question is one of statutory interpretation, which we review de novo. *Munger*, 749 N.W.2d at 338.

The court of appeals found that Sanchez's interests-of-justice claim based on ineffective assistance of appellate counsel arose on July 6, 2004, because all of his attorney's actions as appellate counsel were completed as of that date, so "[a]ll of the facts on which Sanchez's [ineffective assistance of appellate counsel] claim [was] based were known or knowable by him." *Sanchez*, 2010 WL 2813535, at *3. Sanchez argues that the court of appeals erred because it is irrelevant when he should have known the facts giving rise to his claim. According to Sanchez, his interests-of-justice claim based on ineffective assistance of appellate counsel arose only after he had actual, subjective knowledge that his counsel was ineffective. Under an actual knowledge standard, Sanchez contends that his interests-of-justice claim arose on April 16, 2008, when the SPDO told him his appeal was never perfected. Because Sanchez filed his petition within 2 years of April 16, 2008, Sanchez argues that his claim is timely under subdivision 4(c). We disagree.

### 1.

We have not previously decided when a claim arises for purposes of Minn.Stat. § 590.01, subd. 4(c). *See Rickert*, 795 N.W.2d at 242 (explaining that the earliest an interests-of-justice claim based on the transcript delivery could arise was when the transcript was ordered, and the latest the claim could have arisen was when the court reporter delivered the transcript); *see also Roby v. State*, 808 N.W.2d 20, 24 n. 2 (Minn.2011). But in the context of other time-limitations provisions, we have assessed the accrual of the cause of action based on an objective "knew or should have known" standard. *See D.M.S. v. Barber*, 645 N.W.2d 383, 387 (Minn.2002) (applying the objective "knew or should have known" standard even to the delayed discovery statute applicable to sexual abuse cases (citation omitted) (internal quotation marks omitted)); *see also Estate of Jones by Blume v. Kvamme*, 449 N.W.2d 428, 431 (Minn.1989). And we have rejected the subjective, actual knowledge standard that Sanchez advocates. *See Wild v. Rarig*, 302 Minn. 419, 449–50, 234 N.W.2d 775, 794–95 (1975) (noting that absent active fraudulent concealment of the cause of action by the defendant, "[i]gnorance or lack of knowledge ... will not toll the statute of limitations"); *Dalton v. Dow Chem. Co.*, 280 Minn. 147, 153, 158 N.W.2d 580, 584 (1968) ("Under our statutes it has been determined that ignorance of a cause of action not involving continuing negligence or trespass, or fraud on the part of the defendant, does not toll the accrual of a cause of action.").

■ We conclude that the same objective standard we apply in the context of the accrual of other statutes of limitations should also apply to the limitations period in the postconviction statute. We have often said that " 'when the legislature uses a phrase we assume the legislature is

aware of the common law understanding of the phrase and that the legislature intended to use the phrase according to its commonly understood meaning.' " *U.S. Bank N.A. v. Cold Spring Granite Co.*, 802 N.W.2d 363, 372 (Minn.2011) (quoting *Gassler*, 787 N.W.2d at 586; *In re Welfare of D.D.S.*, 396 N.W.2d 831, 832 (Minn.1986)). Our case law has clearly established that we assess when a claim arises or accrues based on an objective "knew or should have known" standard. *See, e.g., D.M.S.*, 645 N.W.2d at 387; *Wild*, 302 Minn. at 449–50, 234 N.W.2d at 794–95. We presume that the Legislature was aware of this objective standard when it used the phrase "the date the claim arises" in Minn. Stat. § 590.01, subd. 4(c). *See* Minn.Stat. § 645.17(4) (2010). If the Legislature intended a different standard to apply, it could have so provided. *See Johnson v. Winthrop Labs. Div. of Sterling Drug, Inc.*, 291 Minn. 145, 151, 190 N.W.2d 77, 81 (1971) ("The legislature has not seen fit to provide a statutory tolling period to protect plaintiffs from their own ignorance although we held many years ago that such ignorance does not toll statutes of limitations."). In the absence of legislative direction to apply a subjective, actual knowledge test, we adhere to the objective standard reflected in our case law.

Sanchez urges us to depart from the objective standard because his claim is grounded in ineffective assistance of counsel. Citing *Noske v. Friedberg*, 670 N.W.2d 740, 744 (Minn.2003), Sanchez contends that "[i]n other cases involving criminal defense counsel's ineffective assistance, this [c]ourt has extended the time a claim arises beyond the time the attorney commits the unprofessional conduct." According to Sanchez, *Noske* supports his argument that an interests-of-justice claim based on ineffective assistance of counsel arises when a petitioner has actual knowledge that his counsel was ineffective. In *Noske*, we held that a claim for *attorney malpractice in a criminal matter* arose only after a court concluded that the attorney had rendered ineffective assistance of counsel and vacated the plaintiff's conviction. *Noske*, 670 N.W.2d at 744. Sanchez reads *Noske* to mean that an interests-of-justice claim based on *ineffective assistance of counsel* can arise only once a petitioner subjectively knows that his counsel was ineffective. As applied here, Sanchez contends that the rule from *Noske* leads to the conclusion that his claim did not arise until he learned from the SPDO that his appeal had never been perfected.

*Noske* does not provide a basis for us to depart from the objective standard in determining when a claim arises under Minn. Stat. § 590.01, subd. 4(c). In *Noske*, we followed our well-established rule that a claim arises when it will survive a motion to dismiss for failure to state a claim. *Noske*, 670 N.W.2d at 742.[8] Sanchez is correct that a claim of legal malpractice based on legal advice in a criminal matter cannot arise until sometime after the con-

---

**8.** We have held that a claim arises when the cause of action accrues. *See, e.g., Antone v. Mirviss*, 720 N.W.2d 331, 335 (Minn.2006). And an action does not accrue until it can withstand a motion for dismissal for failure to state a claim upon which relief may be granted. *Id.* This has been our consistent approach for over 100 years. In 1901, we first held that "the cause of action or suit arises ... when and as soon as the party has a right to apply to the proper tribunals for relief." *Ganser v. Ganser*, 83 Minn. 199, 201–02, 86 N.W. 18, 18 (1901) (citation omitted) (internal quotation marks omitted). Since our holding in *Ganser*, this rule has been applied uniformly to statutes of limitations across substantive legal areas. *See Molloy v. Meier*, 679 N.W.2d 711, 720 (Minn.2004) (medical malpractice); *Vlahos v. R & I Const. of Bloomington, Inc.*, 676 N.W.2d 672, 678–79 (Minn.2004) (breach of warranty for new home construction); *D.M.S.*, 645 N.W.2d at 387–88 (personal injury through sexual abuse); *Wild*, 302 Minn. at 449, 234 N.W.2d at 794 (defamation).

viction has been overturned. This rule of accrual, however, has nothing to do with the plaintiff's subjective or objective knowledge of his claim. In Minnesota, a valid criminal conviction cannot be attacked in a subsequent civil proceeding because of the conviction's presumption of regularity. *Id.* at 744. The plaintiff in *Noske* therefore could not bring a claim for legal malpractice—and thus his claim did not arise—until his conviction was overturned. *Id.* at 742–43 (explaining that the plaintiff must allege "that but for [the attorney's] conduct the plaintiff would have been successful in the prosecution or defense of the action" (citations omitted) (internal quotation marks omitted)). But the plaintiff's subjective awareness of the malpractice has no bearing on the accrual of the plaintiff's cause of action, and *Noske* does not suggest that we should vary from our usual rule that a claim arises when the claimant knew or should have known of the claim.

■ In sum, we agree with the court of appeals and hold that a petitioner's claim under Minn.Stat. § 590.01, subd. 4(b)(5), arises when the petitioner knew or should have known that he had a claim.

### 2.

■ Applying that objective standard in this case, we also agree with the lower courts that subdivision 4(c) bars Sanchez's invocation of the interests-of-justice exception because he brought his petition more than 2 years after his interests-of-justice claim arose. The determination of when Sanchez's interests-of-justice claim arose is a question of fact. On appeal from a postconviction court's denial of relief, we apply the clearly erroneous standard to the court's findings of fact. *Riley v. State,* 792 N.W.2d 831, 833 (Minn.2011).

The postconviction court found that Sanchez knew or should have known of his interests-of-justice claim no later than July 6, 2004. This finding was not clearly erroneous. On July 6, 2004, the district court told Sanchez that his appeal had not been filed. By this date then, Sanchez knew or should have known that his attorney was ineffective for not filing an appeal of Sanchez' conviction. Because Sanchez brought his petition for postconviction relief more than 2 years after his interests-of-justice claim arose, we hold that subdivision 4(c) prevents Sanchez from invoking the interests-of-justice exception in subdivision 4(b)(5).

### C.

■ Having concluded that subdivision 4(c) bars the invocation of the interests-of-justice exception in subdivision 4(b)(5), we next consider Sanchez's argument that the time limitation in subdivision 4(c) should be tolled under the doctrine of equitable tolling. The doctrine of equitable tolling allows a court to consider the merits of a claim when it would otherwise be barred by a statute of limitations. *See Holland v. Florida,* —— U.S. ——, 130 S.Ct. 2549, 2560, 177 L.Ed.2d 130 (2010); *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); *State by Khalifa v. Russell Dieter Enters., Inc.,* 418 N.W.2d 202, 204 (Minn.App.1988). Sanchez argues that the 2–year time limit subdivision 4(c) imposes on the subdivision 4(b) exceptions is nonjurisdictional, and therefore subject to equitable tolling. Sanchez further argues that he meets the conditions for equitable tolling, analogizing his situation to cases where we have equitably tolled a statute of limitations when a defendant fraudulently concealed a plaintiff's cause of action. *See Wild,* 302 Minn. at 450, 234 N.W.2d at 795. Sanchez argues that his appellate counsel was ineffective, that "an attorney's lack of diligence" is similar to fraudulent concealment, and that, therefore, equitable tolling should be applied to his petition. While we agree with Sanchez that the 2–year

time limit in subdivision 4(c) is nonjurisdictional, we need not decide in this case whether it is subject to equitable tolling because even if equitable tolling were applied, Sanchez would not be entitled to relief under the doctrine.[9]

The language of Minn.Stat. § 590.01, subd. 4(c), does not state that its 2–year time limit can be tolled. We have, however, tolled statutes of limitations through application of a doctrine that exists independently from nonjurisdictional statutes. *See, e.g., Schmucking v. Mayo,* 183 Minn. 37, 38–39, 235 N.W. 633, 633 (1931) (stating that fraudulent concealment of a cause of action equitably tolls the statute of limitations "apart from any statute"); *St. Paul, Minneapolis & Manitoba Ry. Co. v. Olson,* 87 Minn. 117, 120, 91 N.W. 294, 296 (1902) (discussing that tolling may apply "even though the statute makes no specific exception" for it).

But the standard we have used to toll statutes of limitations is necessarily a high one. *See Knipple v. Lipke,* 211 Minn. 238, 244, 300 N.W. 620, 624 (1941) ("If such inaction as we have here, whether by the receiver [defendant] or the court, can suspend the running of any statute of limitations, there might in many cases be little left of such legislation."). For example, we have tolled the statute of limitations when a party showed that he was prevented from timely procedure in his suit by some "paramount authority" or by situations arising out of "invincible necessity." *St. Paul, Minneapolis & Manitoba Ry. Co.,* 87 Minn. at 120, 91 N.W. at 296 (holding that the adverse possession period was tolled for 11 years while claims over the land at issue were subject to the exclusive jurisdiction of a federal agency). We have also held that the statute of limitations on a cause of action is tolled when, but for the

fraudulent concealment of the cause of action by the defendant, the diligent plaintiff would have known that she had a cause of action. *See Wild,* 302 Minn. at 450–51, 234 N.W.2d at 795 (discussing that fraudulent concealment of a defamation claim would toll the statute of limitations); *Schmucking,* 183 Minn. at 38–39, 235 N.W. at 633 (discussing that fraudulent concealment of a medical malpractice claim would toll the statute of limitations). In those cases in which we have applied tolling due to fraud, we have been clear that the plaintiff's lack of knowledge of the cause of action is irrelevant unless the defendant has actively concealed its existence. *Wild,* 302 Minn. at 449–51, 234 N.W.2d at 794–95; *Schmucking,* 183 Minn. at 39, 235 N.W. at 633. And we have applied tolling only when some factor completely outside the claimant's control prevented him from meeting a statutory deadline. *See Wild,* 302 Minn. at 450–51, 234 N.W.2d at 794–95; *Schmucking,* 183 Minn. at 39, 235 N.W. at 633.

The limited application of tolling in our case law is not dissimilar to the federal courts' application of equitable tolling in the context of the habeas corpus statute, the federal equivalent of our postconviction statute. The Supreme Court of the United States recently held that the statute of limitations in the federal habeas corpus statute is subject to equitable tolling. *Holland v. Florida,* 130 S.Ct. at 2554; *see* 28 U.S.C. § 2244(d) (2006). In *Holland,* the Court held that tolling the statute of limitations in the habeas corpus statute was appropriate when (1) a petitioner had been pursuing his rights reasonably diligently, and (2) some extraordinary circumstance prevented him from filing his habeas corpus petition on time. 130 S.Ct. at 2562.[10]

---

**9.** In *Carlton v. State,* 816 N.W.2d 590, 606–07 (Minn.2012), released today, we held that Minn.Stat. § 590.01, subd. 4(c), is not jurisdictional.

**10.** Many states have concluded that their postconviction statute's time limits are subject

■ Based on our review of the record, Sanchez would not be entitled to relief under either the standard applied in our tolling cases or under the factors articulated in *Holland.* This is so because Sanchez has not demonstrated that he was diligently trying to pursue relief on his claim during the limitations period and that a state actor or some other "paramount authority" prevented him from doing so. *St. Paul, Minneapolis & Manitoba Ry. Co.,* 87 Minn. at 120, 91 N.W. at 296. Importantly, Sanchez makes no argument that the State impeded him in any way in pursuing his petition for postconviction relief. And the record contains no evidence of any such interference. To the contrary, the record reflects that the district court told Sanchez on July 6, 2004, that his appeal had not been filed. Sanchez has also not shown that he was prevented from discovering his claim due to fraudulent concealment. Sanchez argues that fraudulent concealment is equivalent to an attorney's lack of diligence in representing a criminal defendant on appeal. But a lack of dili-

gence is fundamentally different from fraudulent concealment. Even assuming that his attorney, through a lack of diligence, failed to tell Sanchez that his appeal was never perfected, that failure was fundamentally different from actively concealing that fact from Sanchez.

But even if we held that Sanchez's attorney's alleged ineffective assistance of counsel could be an extraordinary circumstance for purposes of application of tolling, Sanchez clearly did not pursue his postconviction relief rights diligently. Upon learning that he would be sent to prison on July 6, 2004, Sanchez immediately fled to Mexico for over 3 years. Had Sanchez not fled, or had he attempted to return to the United States earlier, he certainly could have confirmed what the district court told him— that his direct appeal was never perfected—by the deadline for a timely postconviction petition (July 31, 2007). Indeed, when he finally returned from Mexico and contacted the SPDO, he almost immediately discovered this fact.

to equitable tolling. Every state that allows for equitable tolling of the time limits in their postconviction statute states that "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule." *Ex parte Ward v. State,* 46 So.3d 888, 897 (Ala.2007) (quoting *United States v. Marcello,* 212 F.3d 1005, 1010 (7th Cir.2000)); *see, e.g., Leer v. State,* 148 Idaho 112, 218 P.3d 1173, 1176 (Idaho Ct.App.2009) (permitting postconviction statute of limitations to be tolled for the period a petitioner was incarcerated out-of-state without legal representation or access to Idaho legal materials, or when mental illness prevented timely filing); *Commonwealth v. Stacey,* 177 S.W.3d 813, 817 (Ky.2005) (stating that the "critical inquiry [in determining whether to apply equitable tolling] remains whether the circumstances preventing a petitioner from making a timely filing were both beyond the petitioner's control and unavoidable despite due diligence"); *Puckett v. State,* 834 So.2d 676, 678–79 (Miss. 2002) (applying equitable tolling only to the

statute of limitation for postconviction relief in death penalty cases and only when an extraordinary circumstance beyond a diligent petitioner's control prevented timely filing); *In re Bonds,* 165 Wash.2d 135, 196 P.3d 672, 676 (2008) (en banc) (permitting tolling of postconviction statute of limitations only when a diligent petitioner is prevented from timely filing his petition due to bad faith, deception, or false assurances by another). Perhaps the most stringent requirement for equitable tolling of a postconviction statute's time limit is applied in South Carolina. In South Carolina, incarceration in another state *never* tolls the statute of limitations, *Leamon v. State,* 363 S.C. 432, 611 S.E.2d 494, 496 (2005), and mental incompetency tolls the statute of limitations only if the petitioner shows that his mental incompetency prevented compliance with the deadline, *Ferguson v. State,* 382 S.C. 615, 677 S.E.2d 600, 602 (2009). We have not found any state that applies a test less stringent than the federal *Holland* test in the context of postconviction relief.

In sum, Sanchez's claimed failure to file his postconviction petition on time cannot be said to be anything other than his own fault. On that basis, even if the time limitation in subdivision 4(c) could be tolled, Sanchez's claim would not be revived.[11] Because we conclude that Sanchez has not satisfied the high standard necessary for the limitations period to be tolled, we hold that Sanchez's petition is untimely under Minn.Stat. § 590.01, subd. 4(c).

## II.

■ Sanchez argues that if we conclude, as we have, that his petition is untimely, then the time limits in Minn.Stat. § 590.01, subd. 4, are unconstitutional. We review the constitutionality of a statute de novo. *Deegan v. State,* 711 N.W.2d 89, 92 (Minn.2006).

■ Sanchez first argues that the time limits, as applied to him, unconstitutionally deny him his right to one review of his criminal conviction under the Minnesota Constitution. We considered fully and rejected an identical claim in *Carlton v. State,* 816 N.W.2d 590, 610–17 (Minn.2012). Consistent with *Carlton,* we also reject this aspect of Sanchez's claim that subdivision 4 is unconstitutional.

■ Sanchez also argues that the time limits in Minn.Stat. § 590.01, subd. 4, are unconstitutional under the Minnesota Constitution because they violate the principle of separation of powers. Out of "respect for coequal branches of government," we "exercise great restraint in considering the constitutionality of statutes particularly when the consideration involves what is a legislative function and

what is a judicial function." *State v. Johnson,* 514 N.W.2d 551, 554 (Minn. 1994). But we do "have the power to determine what is judicial and what is legislative; and if it is a judicial function that the legislative act purports to exercise," we "must not hesitate to preserve what is essentially a judicial function." *State v. Losh,* 721 N.W.2d 886, 891 (Minn. 2006) (citation omitted) (internal quotation marks omitted); *see* Minn. Const. art. III, § 1. With this standard in mind, we turn to Sanchez's separation of powers argument.

Sanchez argues that the Minnesota Constitution's separation of powers doctrine places authority to establish procedural limitations for vindicating statutory or constitutional rights in the judiciary. Sanchez argues that the time limits the Legislature added to Minn.Stat. § 590.01, in 2005 conflict with a procedural rule we had already established with respect to the postconviction statute. According to Sanchez, our rule was that postconviction petitions were untimely only "in the extreme case where delay was deliberate and inexcusable." *See Stutelberg v. State,* 741 N.W.2d 867, 873 (Minn.2007). And because the time limits created by the Legislature in Minn. Stat. § 590.01, subd. 4, are in conflict with this rule, Sanchez claims that they are an unconstitutional usurpation of our inherent power to create procedural rules. But in *Stutelberg* we did not address the statute of limitations in the postconviction statute, and the "deliberate and inexcusable" delay standard applied there was written in the context of a postconviction statute that did not contain any limitations provision. *See Stutelberg,* 741 N.W.2d at 872–73 (discussing cases applying the deliberate and inex-

11. The dissent posits a hypothetical wherein a "person who is sentenced to life in prison without the possibility of release" is able to prove by clear and convincing DNA evidence that they are actually innocent and inexplicably fails to bring a postconviction petition

within the time limits in § 590.01, subd. 4(c). That, of course, is not this case, and we are not called upon to decide here whether equitable tolling of subdivision 4(c) may be appropriate in other circumstances.

cusable delay standard).[12] *Stutelberg* therefore does not support the conclusion that the Legislature intruded into a judicial function when it amended the postconviction statute to provide a limitations period.

▮▮▮▮▮ Our case law instead consistently recognizes that the creation of statutes of limitations is strictly a legislative function. We have held that courts have no power to extend or modify statutory limitations periods because "[w]hat may be a reasonable time [to bring an action] depends upon the sound discretion of the legislature in the light of the nature of the subject and the purpose of the enactment."[13] *DeMars v. Robinson King Floors, Inc.*, 256 N.W.2d 501, 505 (Minn. 1977); *see also Johnson v. Winthrop Labs. Div. of Sterling Drug, Inc.*, 291 Minn. 145, 151, 190 N.W.2d 77, 81 (1971); *Wichelman v. Messner*, 250 Minn. 88, 108, 83 N.W.2d 800, 817 (1957); *Weston v. Jones*, 160 Minn. 32, 36, 199 N.W. 431, 433 (1924); *Humphrey v. Carpenter*, 39 Minn. 115, 115–16, 39 N.W. 67, 68 (1888). And we "will not inquire into the wisdom of the exercise of this discretion by the legisla-

ture in fixing the period of legal bar, unless the time allowed is manifestly so short as to amount to a practical denial of justice." *Wichelman*, 250 Minn. at 107, 83 N.W.2d at 817 (citations omitted). This is the case even when the right being limited is a constitutional right, because "statutes of limitation ... bar any right, however high the source from which it may be deduced." *Id.* at 107, 83 N.W.2d at 817 (citations omitted).[14]

But Sanchez argues that the limitations provisions in subdivision 4 are unconstitutional as a matter of separation of powers under the analysis we followed in *Losh*, 721 N.W.2d at 891. In *Losh*, we recognized that consistent with our inherent authority, "[t]his court has primary responsibility under the separation of powers doctrine for the *regulation of evidentiary matters and matters of trial and appellate procedure.*" *Id.* (emphasis added) (citations omitted) (internal quotation marks omitted). We held that a statute that limited the time a certain class of criminal defendants had to take an appeal was unconstitutional. *Id.* at 886. Under our interpretation of the Minnesota Rules

---

**12.** Stutelberg filed his petition on March 30, 2006, well within the 2–year time period in Minn.Stat. § 590.01, subd. 4(a). *Stutelberg*, 741 N.W.2d at 872. Accordingly, we had no occasion in *Stutelberg* to address the statutory time limit.

**13.** Our case law also recognizes that statutes of limitation did not exist at common law and that, "[o]rdinarily statutes are presumed not to alter or modify the common law unless they expressly so provide." *Agassiz & Odessa Mut. Fire Ins. Co. v. Magnusson*, 272 Minn. 156, 165, 136 N.W.2d 861, 868 (1965). Therefore, while we have no power to extend or modify statutes of limitations, the common law doctrines of waiver and equitable tolling apply to such statutes unless the Legislature expressly provides otherwise. *See generally Albers v. Fitschen*, 274 Minn. 375, 377, 143 N.W.2d 841, 843 (1966) (applying the doctrine of waiver to a statute of limitations);

*Knipple v. Lipke*, 211 Minn. 238, 239, 300 N.W. 620, 621 (1941) (applying equitable tolling to a statute of limitations).

**14.** The dissent's view requires that we overturn all of this precedent. This is so because, according to the dissent, the only time the Legislature may constitutionally place a time limit on a cause of action is when the Legislature "creates a right not existing at common law." The dissent's argument, taken to its only logical conclusion, would invalidate every single statute of limitations that the Legislature has placed on common law actions. From breach of contract to negligence and personal injury torts, the dissent would invalidate all of these legislatively-adopted statutes of limitations on separation of powers grounds. We decline to adopt such a sweeping rule because it flies in the face of our precedent, and it is not consistent with our understanding of the separation of powers.

of Criminal Procedure prior to *Losh* we had allowed criminal defendants to appeal from the denial of motions to modify their sentence at probation revocation hearings. *Id.* at 891–92. The Legislature, however, had enacted a statute "attempt[ing] to prohibit such an appeal by certain defendants by requiring them to bring a sentencing appeal within 90 days or before they violate probation—whichever deadline passes first." *Id.* at 892. We concluded that the statute, which would have barred Losh's appeal, was unconstitutional, because the statute unconstitutionally encroached on our *"appellate jurisdiction in all cases." Id.* (emphasis added) (citing Minn. Const. art. VI, § 2); *see also In re Welfare of J.R.,* 655 N.W.2d 1, 2–3 (Minn. 2003) (holding that a rule of juvenile procedure setting the time limit for taking an appeal governed rather than a statute setting an identical time limit for taking an appeal); *State v. Johnson,* 514 N.W.2d

551, 553–55 (Minn.1994) (holding that a statute that regulated the procedure by which a misdemeanor could be treated as a petty misdemeanor encroached on the judiciary's determination of in-court procedural matters).

Our analysis in *Losh* does not support the conclusion that the Legislature violated the separation of powers when it enacted the time limits in the postconviction statute. Unlike the statutes at issue in *Losh* and *In re Welfare of J.R.,* which limited the court's ability to hear an appeal in certain cases, Minn.Stat. § 590.01, subd. 4, does not limit our ability to hear an appeal. In fact, Minn.Stat. § 590.06 (2010), expressly allows appellate courts to hear appeals from orders denying petitions for postconviction relief.[15]

We acknowledge that "[m]any statutes and rules have both procedural and substantive aspects." *Johnson,* 514 N.W.2d at 555.[16] Because, "[s]tatutes of limitation,

15. The dissent relies heavily on our "independent appellate authority to review whatever case [we] deem[ ] necessary in the interests of justice" and cites *State v. M.A.P.,* 281 N.W.2d 334 (Minn.1979), in reaching its conclusion that the time limits in Minn.Stat. § 590.01, are unconstitutional. In other words, the dissent concludes that it is unconstitutional for the Legislature to enact time limits on postconviction relief because such time limits could deprive our court of the ability to review criminal convictions. Contrary to the dissent's assertion, however, this case has nothing to do with our appellate authority. Indeed, Sanchez's appeal from the postconviction court's denial of relief to our court is irrefutable evidence that the time limits in Minn.Stat. § 590.01, do not deprive this court of appellate jurisdiction. Under the postconviction statute, postconviction petitioners, as evidenced by this case, are still able to appeal a postconviction court's denial of their petitions. The question presented in this case does not involve our appellate jurisdiction at all, and *M.A.P.* is therefore inapposite. The question presented is whether the time limitations in Minn.Stat. § 590.01, subd. 4, bar a *postconviction* court's consideration of an untimely petition. The dissent does not cite,

and we have not found, any authority for the proposition that our court could somehow use our independent appellate authority to allow a postconviction court to review an untimely postconviction petition in the first instance.

16. The dissent cites to *Fleeger v. Wyeth,* 771 N.W.2d 524 (Minn.2009), to support its argument that all statutes of limitations governing common law actions are procedural and therefore within the purview of the judiciary. *Fleeger* does not help the dissent because the statute of limitations question in *Fleeger* arose in the context of choice of law principles, and we were asked to determine which of two legislatively-enacted statutes of limitations applied to the plaintiff's common law personal injury claims. 771 N.W.2d at 526. We were not, as the dissent would have us do here, choosing between a statute of limitations enacted by the Legislature and a judicially created rule allowing plaintiffs an unlimited time to bring an action. Indeed, the statute of limitation that we found to control the personal injury action at issue in *Fleeger* was a 6–year statute of limitations, enacted by the Minnesota Legislature. *See Fleeger,* 771 N.W.2d at 526, 529 (concluding that the 6–year statute of limitations found in Minn.Stat.

for example, are procedural in that they regulate when a party may file a lawsuit and are substantive in that they are out-come determinative," Sanchez reasons that the Legislature has no authority to limit when a party may file a lawsuit if we have already spoken on the issue. *Id.* That the time limits in the postconviction statute have procedural aspects does not, however, support the conclusion that the time limits violate the separation of powers. And while Minnesota's Constitution grants us inherent authority over the procedures *within* Minnesota's courts, *Losh,* 721 N.W.2d at 891, this authority does not extend to the power to determine when a person may bring a cause of action *to* Minnesota's courts. As reflected in our case law, that determination is for the Legislature.[17]

In sum, the Legislature did not intrude unto a judicial function when it enacted the time limitations provisions in the postcon-viction statute. We therefore hold that the statute is not unconstitutional as a violation of the separations of powers doc-trine.[18]

## III.

Finally, Sanchez argues that even if we conclude, as we have, that his petition for postconviction relief is untimely, we should use our inherent appellate authority to directly review his conviction. Sanchez contends that his conviction has not been subject to appellate review and that there-fore exercise of our inherent authority is warranted. He relies on *Vang v. State,* 788 N.W.2d 111 (Minn.2010), where we used our inherent authority to review the merits of the claim raised in Vang's peti-tion for postconviction relief without first determining whether the petition was timely brought under Minn.Stat. § 590.01, subd. 4. Sanchez argues that like *Vang,* his "is a rare and exceptional case warranting the exercise of the Court's appellate au-thority."

*Vang* does not support our exercise of inherent authority to directly review San-chez's conviction. The question in *Vang* was whether the court that convicted and sentenced Vang as an adult for first-de-gree murder had subject matter jurisdic-tion. 788 N.W.2d at 112. The jurisdic-tional question arose because Vang was 14

§ 541.05 (2008), governed the plaintiff's ac-tion). Despite its "procedural" nature, we did not strike down as unconstitutional Minnesota's 6–year statute of limitations for contract and tort claims. Moreover, in the cases we cited in *Fleeger* that characterize statutes of limitation as procedural, we simi-larly enforced statutes of limitation set by the Legislature to bar a plaintiff's claims. *See, e.g., City of Willmar v. Short–Elliott–Hendrick-son, Inc.,* 512 N.W.2d 872, 875 (Minn.1994).

**17.** It is true that under the time limitations in the postconviction statute, even meritorious claims may be barred. But this is not, as the dissent suggests, an absurd result. Rather, this is often the result of a straightforward application of a statute of limitations, which has as its very purpose the requirement that parties timely exercise their rights. *See Wi-chelman v. Messner,* 250 Minn. 88, 107–08 n. 5, 95, 83 N.W.2d 800, 817 n. 5 (1957).

**18.** The dissent ultimately concludes that so long as a criminal defendant has received one substantive review, the statute of limitations "would not create a constitutional problem" with respect to the separation of powers. But the dissent's separation of powers argument is based on the principle that the judicial branch has "authority over procedural mat-ters." *Losh,* 721 N.W.2d at 891. Either the Legislature has impermissibly intruded into the sphere of the judiciary by legislating with respect to procedural matters exclusively within the judiciary's control, or it has not. The dissent's rule—that the time limits in the postconviction statute violate the separation of powers doctrine only some of the time— finds no support in the Minnesota Constitu-tion's categorical prohibition on one branch "exercis[]ing any of the powers properly be-longing to either of the others." Minn. Const. art. III.

years old at the time of the murder and thus subject to the jurisdiction of the juvenile court in the absence of his certification as an adult. *Id.* at 113. We concluded that Vang's case was the rare and exceptional case that supported the exercise of our inherent authority. *Id.* at 114. Specifically, Vang "persistently" requested assistance from the SPDO in order to secure review of his conviction, including requests made within the 90–day time period provided for appellate review. *Id.* Yet, no appeal was filed. *Id.* In addition, the underlying claim that Vang asserted was "a nonwaivable subject-matter jurisdiction claim that render[ed] Vang's convictions and sentences legally void." *Id.* at 115.

■ Unlike the petitioner in *Vang,* Sanchez was not persistently trying to seek review of his conviction within the appeal period. Instead, his appeal was dismissed because Sanchez did not comply with the court rule requiring the provision of financial arrangements for the trial transcript. Moreover, unlike Vang's subject-matter jurisdiction argument, the errors that Sanchez seeks to have reviewed, the constitutional right to have effective assistance of counsel and to be free from unreasonable searches, are rights that are subject to waiver. *See State v. Clark,* 738 N.W.2d 316, 337 (Minn.2007); *State v. Harris,* 590 N.W.2d 90, 102 (Minn.1999). The persistent attempt to have a nonwaivable issue reviewed is substantially different from making no timely attempt at having rights subject to waiver reviewed. Sanchez's case is procedurally and substantively different from *Vang.* And there is no other basis in the record to support the conclusion that Sanchez's case is the rare and exceptional one that requires us to resort to our inherent authority to directly review his conviction. We therefore decline to review Sanchez's conviction under our inherent authority.

Affirmed.

ANDERSON, PAUL H., Justice (concurring).

For reasons stated in my concurring opinion in *Carlton v. State,* 816 N.W.2d 590, 616–17 (Minn.2012), I would not write as broadly as the court does and would not draw comparison to the federal habeas statute, 28 U.S.C. § 2244 (2006), or to the cases recognizing equitable tolling of that statute's provisions. Otherwise, I join in the court's opinion.

STRAS, Justice (concurring).

For the reasons stated in my concurring opinion in *Carlton v. State,* 816 N.W.2d 590, 616–17 (Minn.2012), I would not have considered Sanchez's claim that he was entitled to have the time limitation in Minn.Stat. § 590.01, subd. 4(c) (2010), equitably tolled while he was in Mexico. Otherwise, I join the opinion of the court.

PAGE, Justice (dissenting).

I respectfully dissent. As outlined in my dissent in *Carlton v. State,* 816 N.W.2d 590, 619–20 (Minn.2012), to the extent that Minn.Stat. § 590.01, subd. 4 (2010), precludes a defendant's right to one substantive review of his or her conviction, it is unconstitutional.

In addition, I not only believe the limitations periods established by Minn.Stat. § 590.01, subd. 4(a) and (c), are unconstitutional under the Due Process Clause of the Minnesota Constitution, Minn. Const. art. I, § 7, in cases in which they deprive a person of the right to one substantive review of a criminal conviction, I also believe they impermissibly encroach upon this court's authority to regulate matters of trial and appellate procedure. Further, I believe that in acquiescing in the Legislature's usurpation of judicial authority, the court has effectively abdicated its inherent authority to review trial court proceedings in the interests of justice. Accordingly, I

would also hold that the Legislature's adoption of these limitations periods violates our Constitution's principles of separation of powers.

"[D]ue respect for coequal branches of government requires this court to exercise great restraint in considering the constitutionality of statutes particularly when the consideration involves what is a legislative function and what is a judicial function." *State v. Johnson,* 514 N.W.2d 551, 554 (Minn.1994). This due respect notwithstanding, "courts have the power to 'determine what is judicial and what is legislative; and if it is a judicial function that the legislative act purports to exercise, [this court] must not hesitate to preserve what is essentially a judicial function.'" *State v. Losh,* 721 N.W.2d 886, 891 (Minn.2006) (quoting *State v. McCoy,* 682 N.W.2d 153, 160 n. 7 (Minn.2004)).

Our court has "primary responsibility under the separation of powers doctrine for the regulation of evidentiary matters and matters of trial and appellate procedure." *State v. Olson,* 482 N.W.2d 212, 215 (Minn.1992). We derive this authority over procedural matters from our inherent judicial powers. *Johnson,* 514 N.W.2d at 553. "The legislature has the power to declare what acts are criminal and to establish the punishment for those acts as part of the substantive law," but this court exercises exclusive authority to regulate "the method by which the guilt or innocence of one who is accused of violating a criminal statute is determined." *State v. Lindsey,* 632 N.W.2d 652, 658 (Minn.2001). "A statute is procedural, and therefore subject to this court's inherent authority, 'when it neither creates a new cause of action nor deprives [a] defendant of any

defense on the merits.'" *Losh,* 721 N.W.2d at 891 (quoting *Johnson,* 514 N.W.2d at 555).

Here, the court concludes that the time limits in section 590.01, subdivision 4(a) and (c), are statutes of limitation. We have previously stated that "[t]he common law in Minnesota is clear. When directly faced with the issue, we have considered statutes of limitations to be procedural without exception." *Fleeger v. Wyeth,* 771 N.W.2d 524, 528 (Minn.2009).[1]

I recognize that we have previously differentiated between "ordinary or general" statutes of limitations and those, like those at issue here, that are part of a statutory remedy. *See Acton Constr. Co. v. Comm'r of Revenue,* 391 N.W.2d 828, 835 (Minn. 1986); *State v. Bies,* 258 Minn. 139, 146, 103 N.W.2d 228, 235 (1960). In *Bies,* we declined to invalidate a statute of limitations that precluded the State from pursuing a statutory claim to collect additional personal income taxes, interest, and penalties, concluding that "[i]n creating the right involved, the legislature has the power to impose any restrictions it sees fit." *Bies,* 258 Minn. at 146, 103 N.W.2d at 234. We further clarified our holding from *Bies* in *Acton,* another tax case, in which we stated that the Legislature's power to impose "any restrictions it sees fit" arises "when the legislature creates a right not existing at common law." *Acton Constr. Co.,* 391 N.W.2d at 835.

The two-year time limits at issue in these cases are, I acknowledge, part of a statutory remedy. But this statutory remedy is very different from those at issue in *Bies* and *Acton.* At this point in our legal history, the postconviction remedy in

---

1. We noted in *Fleeger v. Wyeth* that "on more than one occasion" we have stated that "statutes of limitation have both procedural and substantive aspects." 771 N.W.2d at 528 n. 3 (citing *State v. Lemmer,* 736 N.W.2d 650, 657–

58 (Minn.2007); *see Johnson,* 514 N.W.2d at 555.) But we noted that those comments were "dicta, however, as statutes of limitations were not at issue in those cases." *Fleeger,* 771 N.W.2d at 528 n. 3.

Minnesota is a statutory remedy. But, unlike the case with the tax laws, in adopting Minnesota's statutory postconviction remedy, our Legislature did not "create a right not existing at common law." Quite the contrary. The current form of our postconviction statute was adopted by this court, as a matter of common law. *See State ex rel. Holm v. Tahash*, 272 Minn. 466, 471, 139 N.W.2d 161, 164 (1965). We held in *Tahash* that recent decisions by the United States Supreme Court that broadened the postconviction jurisdiction of federal trial courts "dictated" enlargement of Minnesota's habeas corpus remedy into a full-fledged postconviction procedure "by which a convicted prisoner can obtain an evidentiary hearing and determination of any claimed violation of fundamental rights, including those guaranteed by the Federal Constitution." *Id.* at 469–70, 139 N.W.2d at 163. The Legislature's adoption in 1967 of Minn.Stat. ch. 590, only codified existing law. *See* Act of May 10, 1967, ch. 336, § 1, 1967 Minn. Laws 517, 517–20 (codified as amended at Minn.Stat. ch. 590 (2010)). It is precisely because of this important difference that the rule applied in those two tax cases does not apply here.

Not only do the limitations periods established in section 590.01, subdivision 4(a) and (c), interfere with our authority to adopt procedural rules, they interfere with our authority to review criminal convictions in the "interests of justice." Minn. Stat. § 590.01, subd. 4(b)(5). By its own terms, the two-year time bar in subdivision 4(c) operates to bar claims under subdivision 4(b)(5) that are not only *not frivolous*, but are also worthy of review "in the interests of justice." As the Legislature—and

the court—see it, even these concededly meritorious cases must be dismissed, simply because the petitioner has delayed seeking relief. I disagree that the Legislature has the authority to preclude this court from exercising its inherent constitutional authority to review decisions of the lower courts.[2]

In *State v. M.A.P.*, we stated that the Legislature could not " 'by regulation deny to this court its constitutionally independent appellate authority to review whatever this court deems mandated in the interests of justice.' " 281 N.W.2d 334, 336–337 (Minn.1979) (quoting *In re O'Rourke*, 300 Minn. 158, 175, 220 N.W.2d 811, 821 (1974)). We continued:

> We affirm our right to take jurisdiction in those situations where in the interests of justice the merits should be heard. Thus, although the relevant statutory provisions, case law, or Rules of Civil Appellate Procedure might otherwise preclude appellate review because the appeal is not timely, we nevertheless could accept jurisdiction if the interests of justice so warrant.

*Id.* We grounded this authority to act in the Judiciary Article of the Minnesota Constitution, art. VI, § 2, which states, in part, "[t]he supreme court ... shall have original jurisdiction in such remedial cases as are prescribed by law, and appellate jurisdiction in all cases, but there shall be no trial by jury in the supreme court." *See M.A.P.*, 281 N.W.2d at 336; *see also Metro. Airports Comm'n v. Metro. Airports Police Fed'n*, 443 N.W.2d 519, 523 (Minn.1989) (holding that the Legislature "cannot deny this court its constitutionally independent appellate authority to review

---

**2.** The court's decision to allow the Legislature to encroach upon our inherent judicial authority under Article VI of the Minnesota Constitution is directly tied to my conclusion that the statutes of limitation are unconstitutional insofar as they deny a criminal defendant the right to one substantive review. Absent the denial of the right to one substantive review of the conviction, the statute of limitations would not create a constitutional problem.

whatever case it deems necessary in the interests of justice even if 'statutory provisions, case law or the Rules of Civil Appellate Procedure might otherwise preclude appellate review'" (quoting *M.A.P.*, 281 N.W.2d at 337)). Our independent authority to review postconviction proceedings is all the more significant in light of the unique role that a first review by postconviction proceeding plays in Minnesota. Unlike in other states, where the remedies provided by postconviction proceedings are more limited, in Minnesota a first review by postconviction proceedings is "substantially similar in scope to a direct appeal." *Deegan v. State*, 711 N.W.2d 89, 94 (Minn. 2006).

We have attributed our authority to act in "the interests of justice" to our power to supervise the trial courts. *State v. Salitros*, 499 N.W.2d 815, 820 (Minn.1993).[3] That power would be illusory indeed if we could not ensure that the courthouse doors are not slammed shut to criminal defendants who have not had at least one substantive review of the trial court proceedings. Our ability to undertake a meaningful, effective substantive review is in turn dependent on the lower court's ability in the first instance to hear and decide cases.[4] I recognize "that we have only applied the interests of justice in ex-

ceptional situations." *Gassler v. State*, 787 N.W.2d 575, 586 (Minn.2010). Nonetheless, until today, we have never held that we lack inherent judicial authority to act in the interests of justice. Today, however, the court takes the momentous step of acquiescing to the Legislature's unconstitutional interference with our authority. In doing so, I believe the court abdicates its constitutional authority to ensure that justice is done in the courts of this state. Because the two-year limitations periods in section 590.01, subdivision 4(a) and (c), are plainly procedural, I would conclude that the Legislature has exceeded its authority—and impermissibly encroached upon ours—by its adoption of that time limit. Accordingly, these two-year time limits are unconstitutional because they violate the principle of separation of powers.

Finally, I note that when construing a statute, "words and phrases are construed according to rules of grammar and according to their common and approved usage; but technical words and phrases and such others as have acquired a special meaning ... are construed according to such special meaning or their definition." Minn. Stat. § 645.08(1) (2010). Our goal in statutory construction is to ascertain and give

---

**3.** To be clear, our authority to substantively review the merits of a postconviction petition arises out of two, separate sources: (1) the legislatively-created exceptions to the time-bar in the postconviction statute, Minn.Stat. § 590.01, subd. 4; and (2) our authority granted in Article VI, Section 2 of the Minnesota Constitution. Because the Legislature gave no guidance as to the meaning of the phrase "the interests of justice," we have used our previous, common-law standards. That being said, the statutory provision cannot limit our constitutional authority even if in practice we apply similar—or the same—standards.

**4.** The court's contention that Sanchez's appeal to our court from the postconviction

court's denial of relief is "irrefutable evidence" that "postconviction petitioners ... are still able to appeal a postconviction court's denial of their petitions," is a nonstarter. As this case demonstrates, application of the postconviction statute of limitations will often restrict the scope of that appeal to the issue of timeliness, leaving the defendant without any substantive review—meaningful and effective, or otherwise—of the merits of his or her criminal conviction. Application of the postconviction statute will also restrict the scope of the postconviction court's review of claims. Yet for us to provide meaningful appellate review requires a record from which a meaningful review can be made, but which the postconviction court cannot create.

effect to the intention of the Legislature. Minn.Stat. § 645.16 (2010). "Every law shall be construed, if possible, to give effect to all its provisions. When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." *Id.* In ascertaining the intention of the Legislature, we presume that the Legislature "does not intend a result that is absurd, impossible of execution, or unreasonable." Minn.Stat. § 645.17 (2010). We also presume that the Legislature "intends the entire statute to be effective and certain." *Id.*

Section 590.01, subdivision 4(a), requires that a person seeking postconviction relief must file his petition within two years of the later of the date of the entry of judgment of conviction or, if the person files a direct appeal, the date the appellate court decides the appeal. Minn.Stat. § 590.01, subd. 4(a). Subdivision 4(b) provides five exceptions to this time limit, including subdivision 4(b)(5), which is the subject of this appeal. Minn.Stat. § 590.01, subd. 4(b). Subdivision 4(b)(5) allows a court to hear a postconviction petition, notwithstanding failure to comply with the two-year time limit of subdivision 4(a), when "the petition is not frivolous and is in the interests of justice." Minn.Stat. § 590.01, subd. 4(b)(5). Subdivision 4(c), however, requires that "[a]ny petition invoking an exception provided in [subdivision 4](b) must be filed within two years of the date the claim arises." Minn.Stat. § 590.01, subd. 4(c).

As applied to Sanchez's petition, application of the two-year time bar in subdivision 4(c) to preclude consideration of Sanchez's ineffective-assistance-of-counsel claim leads to a result that is "absurd" and "unreasonable." While on the one hand, subdivision 4(b) purports to allow review of a nonfrivolous petition in the interests of justice after expiration of the two-year time bar in subdivision 4(a), the court construes subdivision 4(c) to categorically preclude review beyond two years. As construed by the court, the time limit in subdivision 4(c) effectively eviscerates the exception provided in subdivision 4(b)(5). Indeed it would have the same effect and produce the same result even if Sanchez had a valid claim under Minn.Stat. § 590.01, subd. 4(b)(2), establishing by clear and convincing evidence that he is actually innocent of the offense for which he was convicted.[5]

Because the Legislature cannot possibly have intended to render subdivisions 4(b)(2) and (5) superfluous, I would hold that subdivision 4(c) is ambiguous. I would further conclude that in order to reconcile subdivisions 4(b)(5) and 4(c), the more specific interests-of-justice exception prevails over the more general claim-arises provision. *See* Minn.Stat. § 645.26 (2010) (if a general provision in a law is in conflict with a special provision in the same or another law, and the two cannot be construed so that effect may be given to both, the special provision shall prevail and shall be construed as an exception to the general provision).

---

**5.** Pity the poor person who is sentenced to life in prison without the possibility of release and who can prove by clear and convincing evidence by way of DNA evidence actual innocence, but who brings an appeal outside the time period permitted by subdivision 4(c). The court implies that equitable tolling may be available to provide a remedy in such a situation. But, as suggested in the concurrence of Justice Stras, equitable tolling is likely foreclosed by Minn.Stat. § 590.01, subd. 4(c). Moreover, if applicable, equitable tolling puts the court in the awkward position of having to pick and choose which petitions are "worthy" of substantive review.

For the foregoing reasons, I would reverse the judgment of the lower courts and remand for consideration of both this issue and the waiver issue I outlined in *Carlton*, 816 N.W.2d at 626.