STATE OF MINNESOTA

IN SUPREME COURT

A15-0564

Kanabec County                                                    Anderson, J.
                                                    Took no part, Chutich, J.


Jason Lee Bolstad,

            Appellant,

vs.                                                    Filed: March 23, 2016
                                                    Office of Appellate Courts
State of Minnesota,

            Respondent.

_____

Zachary A. Longsdorf, Longsdorf Law Firm, PLC, Inner Grove Heights, Minnesota, for appellant.

Lori Swanson, Attorney General, and Angela Helseth Kiese, Assistant Attorney General, Saint Paul, Minnesota; and

Barbara McFadden, Kanabec County Attorney, Mora, Minnesota, for respondent.

_____

S Y L L A B U S

1.      The postconviction court did not abuse its discretion when it concluded that appellant's second petition for postconviction relief was untimely.

2.      The facts of this case do not warrant granting appellant a new trial in the interests of justice.

Affirmed.

1

O P I N I O N

ANDERSON, Justice.

In 2003, a Kanabec County jury found appellant Jason Bolstad guilty of two counts of first-degree murder and two counts of second-degree murder in connection with the killing of Bolstad's father, Gary Bolstad. Following the jury's verdict, the district court sentenced Bolstad to life imprisonment without the possibility of release on the charge of first-degree premeditated murder. Bolstad appealed, challenging, among other things, the sufficiency of the state's evidence. We affirmed Bolstad's conviction. *State v. Bolstad*, 686 N.W.2d 531 (Minn. 2004). In 2007, Bolstad filed his first petition for postconviction relief. After holding an evidentiary hearing, the postconviction court denied the first petition for postconviction relief in 2011. On October 2, 2014, Bolstad filed his second petition for postconviction relief. The postconviction court denied the second petition without holding an evidentiary hearing and Bolstad appealed to our court. We affirm.

I.

The facts underlying Bolstad's conviction are detailed in our opinion in *State v. Bolstad*, 686 N.W.2d 531, 534-38 (Minn. 2004). We provide only those facts that are relevant to this postconviction appeal. On April 2, 1996, Gary Bolstad was found dead outside of his home on Devil's Lake in Kanabec County. The victim had been shot several times with a .32 caliber pistol, but none of the gunshot wounds were life-threatening. The victim was then severely beaten with a blunt object. The medical examiner determined that the victim's head was struck at least 24 times with substantial

2

force, although the extent of his injuries made it impossible to know exactly how many blows the victim received. The repeated blows to the victim's head fractured his skull and caused substantial damage to his brain. The medical examiner determined that the cause of death was blunt force trauma to the head.

The victim's son, appellant Jason Bolstad, initially told investigators that he had spent the day of April 2nd at his girlfriend's apartment in Hudson, Wisconsin. Bolstad's story was confirmed by two alibi witnesses—Angie Letourneau, the sister of Bolstad's girlfriend, who told investigators that Bolstad had been at the apartment with her for the entire day; and Billy VonWald, who told investigators that he had seen Bolstad twice that day, once around noon and once later that night.

The murder went unsolved for nearly 6 years until, in late 2001, investigators received a tip that Angie Letourneau may have been lying when she provided an alibi for Bolstad. After an inquiry by law enforcement, Angie admitted that the alibi she provided for Bolstad in 1996 was false. In her new statement, Angie indicated that Bolstad had left the apartment early in the afternoon on the day of the murder and had not returned until after dark. When Bolstad did return, he told her not to turn on the lights or look at him, went into the bathroom, took a shower, and emerged with a garbage bag full of what she thought were clothes. Bolstad then took the garbage bag outside with VonWald, who had arrived while Bolstad was in the shower, and disposed of it. Angie said that Bolstad had asked her to lie and say that he had spent the day with her at the apartment.

3

After receiving use immunity,[1] VonWald not only retracted his statement from 1996, he also produced a .32 caliber pistol, which he claimed he had loaned to Bolstad on the Friday before the murder. Ballistics testing confirmed that the pistol VonWald turned over had fired the bullets that struck the victim. Additionally, the pistol had what appeared to be dried blood on the handle. Forensics testing confirmed that the blood belonged to the victim.

The investigation also revealed that, on several occasions, Bolstad had said that he wished his father were dead. A friend of Bolstad told investigators that Bolstad had offered him several thousand dollars to kill Bolstad's father and that the friend and Bolstad discussed the particulars of how someone could shoot Bolstad's father with a rifle from across Devil's Lake. Finally, investigators discovered that Bolstad received a substantial financial benefit as a result of his father's death. Bolstad used the money he received due to his father's death to purchase a house.

When presented with this evidence, a grand jury indicted Bolstad on two counts of first-degree murder and two counts of second-degree murder. Following a jury trial in Kanabec County, Bolstad was found guilty on all counts. The district court sentenced Bolstad to life imprisonment for first-degree premeditated murder.

---

[1] Minnesota Statutes § 609.09, subd. 1 (2014), allows a prosecuting attorney to request use immunity for a prospective witness in a criminal proceeding. Once an authorized judge grants use immunity and orders the witness to testify, "no testimony or other information compelled under the order, or any information directly or indirectly derived from such testimony or other information may be used against the witness in any criminal case." *Id*.

4

*See* Minn. Stat. § 609.185(a)(1) (2014). This court affirmed Bolstad's conviction on direct appeal. *See Bolstad*, 686 N.W.2d at 534.

Bolstad filed his first petition for postconviction relief in 2007. The petition claimed, among other things, that Bolstad had discovered evidence that substantiated the story of an alibi witness who was known at the time of trial, but who did not testify because of a lack of corroborating evidence. After a hearing, the postconviction court denied Bolstad's first petition in 2011.[2] Bolstad filed the current petition for postconviction relief, his second, on October 2, 2014. This petition alleged that Bolstad was entitled to a new trial on two grounds. First, the district court committed reversible error in the manner in which it responded to a jury question during deliberations. Second, Bolstad argued that the postconviction court should use the supervisory powers doctrine to grant him a new trial "in the interests of justice." The postconviction court denied the second petition without holding an evidentiary hearing, and Bolstad now appeals.

II.

Bolstad first claims that the postconviction court erred in failing to reach the merits of his claim that the district court gave an erroneous jury instruction during his trial. Specifically, Bolstad contends that the court erred when it provided an additional instruction in response to a jury question regarding the count of first-degree murder while committing first-degree aggravated assault. Bolstad now contends that the additional

---

[2] Bolstad did not appeal the ruling of the postconviction court on his first petition.

instruction had the effect of removing the element of intent from the jury and directing the jury to return a guilty verdict. The State argues that the instruction was a proper statement of the law and that Bolstad's claim is procedurally barred, *Knaffla*-barred, and untimely.

A.

We will not disturb the decisions of a postconviction court absent an abuse of the postconviction court's discretion. *Perry v. State*, 595 N.W.2d 197, 200 (Minn. 1999). "A petition for postconviction relief is a collateral attack on a conviction that carries a presumption of regularity." *Hummel v. State*, 617 N.W.2d 561, 563 (Minn. 2000). A postconviction petitioner is entitled to a hearing "[u]nless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." Minn. Stat. § 590.04, subd. 1 (2014); *Zenanko v. State*, 587 N.W.2d 642, 644 (Minn. 1998). No hearing is required if a petition is untimely under the postconviction statute of limitations. *See Wayne v. State*, 860 N.W.2d 702, 704 (Minn. 2015). Similarly, no hearing is required if the claim is barred by this court's decision in *State v. Knaffla*, 309 Minn. 246, 243 N.W.2d 737 (1976). *See Zenanko*, 587 N.W.2d at 644.

B.

The postconviction court determined that Bolstad's claim is both *Knaffla*-barred and untimely. We conclude that Bolstad's claim is untimely. The postconviction statute requires that all claims be filed within 2 years of the entry of judgment of conviction or sentence, if no direct appeal is filed, or an appellate court's disposition on direct appeal, whichever is later. Minn. Stat. § 590.01, subd. 4(a) (2014). The 2-year limitations period

imposed by Minn. Stat. § 590.01, subd. 4(a), became effective on August 1, 2005. Act of June 2, 2005, ch. 136, art. 14, § 13, 2005 Minn. Laws 901, 1098. Because Bolstad's direct appeal was decided before the statute of limitations became effective, he had 2 years from August 1, 2005 to file a petition. *Id.*; *see Roman Nose v. State*, 845 N.W.2d 193, 196 (Minn. 2014). As a result, Bolstad was required to file his petition in 2007. It is undisputed that the current petition was filed on October 2, 2014, more than 7 years after the 2-year limitations period had expired. Consequently, Bolstad's claim is untimely under Minn. Stat. § 590.01, subd. 4(a).

Bolstad argues that the court should consider his petition because it is "not frivolous and is in the interests of justice." Minn. Stat. § 590.01, subd. 4(b)(5) (2014). Both parties make arguments regarding whether Bolstad's claim qualifies for the interests-of-justice exception. In the end, however, whether Bolstad can establish the interests-of-justice exception is irrelevant. Even if Bolstad's claim qualified for the interests-of-justice exception, the statute also requires that the claim be brought within 2 years of the date the "claim arises." Minn. Stat. § 590.01, subd. 4(c) (2014); *see Carlton v. State*, 816 N.W.2d 590, 600 (Minn. 2012) (noting that the court should consider whether a petitioner has complied with the 2-year time limit under subdivision 4(c) prior to determining whether the petitioner has qualified for an exception under subdivision 4(b)(2)). "[A] petitioner's claim under [the interests-of-justice exception] arises when the petitioner knew or should have known that he had a claim." *Sanchez v. State*, 816 N.W.2d 550, 560 (Minn. 2012). The knew-or-should-have-known test is an objective standard. *Wayne v. State*, 832 N.W.2d 831, 834 (Minn. 2013). A postconviction court's

7

determination of when a petitioner knew or should have known about his or her claim is reviewed under a clearly erroneous standard. *See id.* (holding that the postconviction court's determination was not "clearly erroneous"); *Sanchez*, 816 N.W.2d at 560 (same).

Here, the postconviction court concluded that Bolstad knew or should have known of the interests-of-justice claim at the time of trial.[3] In light of the fact that Bolstad's trial counsel objected to the jury instruction when it was given, this finding was not clearly erroneous. As a result, Bolstad had 2 years from the time of trial to bring his claim in order to comply with the interests-of-justice exception. Because Bolstad filed his petition more than 11 years after trial, his claim is untimely even if the interests-of-justice exception applied to his claim.

Bolstad urges this court to abandon the knew-or-should-have-known standard for determining when a claim "arises" for purposes of the interests-of-justice exception and instead adopt a subjective standard that asks when the petitioner *actually* knew of his claim. We have repeatedly declined to apply a subjective standard to the interests-of-justice exception. *See Greer v. State*, 836 N.W.2d 520, 523 (Minn. 2013); *Sanchez*, 816 N.W.2d at 560. We are "extremely reluctant" to overrule our precedent and will not do so without a "compelling reason." *State v. Lee*, 706 N.W.2d 491, 494 (Minn. 2005).

---

[3] In this case, Bolstad's substantive claim regarding the jury instructions and his interests-of-justice claim are, in fact, one and the same. In other words, Bolstad does not identify some distinct event that should cause us to review his substantive claim in the interests of justice. As a result, the 2-year limitations period found in Minn. Stat. § 590.01, subd. 4(c), began to run as soon as Bolstad became aware of his underlying substantive claim. Here, that means that the limitations period under Minn. Stat. § 590.01, subd. 4(c), began to run at the time of trial.

Bolstad largely repeats the same arguments that we discussed in *Sanchez* and *Greer* and fails to provide a compelling reason for us to depart from our precedent. Accordingly, we decline Bolstad's invitation to adopt a subjective standard to measure the accrual of a claim under the interests-of-justice exception.

Finally, Bolstad argues that even if *Sanchez* applies, the statute of limitations should be equitably tolled because "extraordinary circumstances" prevented him from complying with it. *See Sanchez*, 816 N.W.2d at 562 (suggesting that the 2-year limitations period in the postconviction statute could theoretically be tolled if the petitioner showed that he had diligently pursued his claim and was prevented from filing on time by extraordinary circumstances). In support of his equitable tolling claim, Bolstad cites his limited access to the law library due to his incarceration. But Bolstad filed an earlier petition for postconviction relief that was timely. We have rejected claims that a lack of education or access to counsel should toll the statute of limitations when a petitioner has previously filed a timely petition. *See Wayne*, 866 N.W.2d at 920; *Erickson v. State*, 842 N.W.2d 314, 319 (Minn. 2014); *see also Roby v. State*, 808 N.W.2d 20, 30 (Minn. 2011) (holding that "general prison policies" that made it more difficult for the petitioner to file his claim in a timely fashion did not constitute the sort of "extraordinary circumstance[s]" necessary to invoke equitable tolling). Bolstad is unable to persuasively distinguish these cases from his own.

Bolstad also asserts that an illness prevented him from effectively pursuing his claim. Although the record contains little, if any, evidence regarding Bolstad's illness, Bolstad only claims that it took "over a year" after his incarceration began for him to

9

return to health. Bolstad was incarcerated immediately after his trial in April 2003. Consequently, even using Bolstad's unsubstantiated estimate of when he had returned to health, he had more than 2 years to bring his claim before the statute of limitations expired.[4] Bolstad does not provide a coherent reason why the statute of limitations should be equitably tolled due to an illness that subsided more than 2 years before the deadline. Therefore, Bolstad's claim is untimely and the postconviction court did not abuse its discretion when it denied his petition without a hearing.

## III.

Next, Bolstad argues that the postconviction court should have used the supervisory powers doctrine to reverse his conviction in the interests of justice. This interests-of-justice claim was not properly before the postconviction court. Postconviction courts do not possess the supervisory powers to which Bolstad refers. *See, e.g.*, *State v. Salitros*, 499 N.W.2d 815, 820 (Minn. 1993). As a result, Bolstad's request that the postconviction court use the supervisory powers doctrine to reverse his conviction was improper and the postconviction court did not abuse its discretion when it denied Bolstad's claim without holding a hearing.

We have previously granted new trials "in the interests of justice when necessary to protect the integrity of judicial proceedings." *Gassler v. State*, 787 N.W.2d 575, 587 (Minn. 2010) (citing *State v. Kaiser*, 486 N.W.2d 384, 385-86 (Minn. 1992)). But we

---

[4] Assuming it took Bolstad 18 months to recover from his illness once he was incarcerated, he would have returned to health around October 2004. The statute of limitations found in Minn. Stat. § 590.01, subd 4(a), required that Bolstad bring his claims in 2007, nearly three years after his return to health.

will only do so in "exceptional circumstances." *Roman Nose*, 845 N.W.2d at 201. The petition and Bolstad's brief complain about a number of issues associated with his trial—from the reliability of witness testimony to the manner in which the investigation was conducted and the nature of the evidence against him. We have already considered, and rejected, the vast majority of the claims that Bolstad raises when we reviewed Bolstad's case on direct appeal. *See Bolstad*, 686 N.W.2d at 538-44. After a thorough review of the record, we conclude that Bolstad is not entitled to relief in the interests of justice based on any of the issues he has raised and we decline to grant him a new trial in the interests of justice.[5]

Affirmed.

CHUTICH, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

---

[5] Because neither party briefed the issue and Bolstad's claim has no substantive merit, we express no opinion as to whether the statute of limitations under Minn. Stat. § 590.01, subd. 4(a), applies to Bolstad's supervisory powers claim.