STATE OF MINNESOTA

IN SUPREME COURT

A16-0225

Hennepin County

Brian Keith Hooper,

Appellant,

vs.

State of Minnesota,

Respondent.

Anderson, J.
Took no part, Lillehaug, J.

Filed: December 14, 2016
Office of Appellate Courts

_____

Jeffrey Dean, Minneapolis, Minnesota, for appellant.

Lori Swanson, Attorney General, Saint Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Jean E. Burdorf, , Assistant County
Attorney, Minneapolis, Minnesota, for respondent.

_____

S Y L L A B U S

The postconviction court did not abuse its discretion by summarily denying

appellant's fourth petition for postconviction relief because the petition was untimely under

the 2-year postconviction statute of limitations, and appellant's previously raised claims

are procedurally barred.

Affirmed.

Considered and decided by the court without oral argument.

1

ANDERSON, Justice.

Appellant Brian Keith Hooper appeals the postconviction court's summary denial of his fourth petition for postconviction relief. *See State v. Hooper* (*Hooper I*), 620 N.W.2d 31 (Minn. 2000); *State v. Hooper* (*Hooper II*), 680 N.W.2d 89 (Minn. 2004); *State v. Hooper* (*Hooper III*), 838 N.W.2d 775 (Minn. 2013). The postconviction court denied Hooper's petition as untimely under Minn. Stat. § 590.01, subd. 4 (2014), and his previously raised claims as procedurally barred under *State v. Knaffla*, 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976). We affirm.

I.

In April 1998, police found Ann Prazniak's body in a box in the bedroom closet of her apartment with her wrists, face, and head bound with beige packing tape.[1] Her body was wrapped in a mattress pad and trash bags, and the box was wrapped in a string of Christmas lights. Neighbors told police that they had seen a woman, C.L., at Prazniak's apartment around the time of the murder. C.L. disclosed the names of others, including Hooper, who had visited the apartment as well. Police found Hooper's fingerprints on two sandwich bags and a beer can in Prazniak's living room, and C.L.'s fingerprints on pieces of beige packing tape stuck to the floor. Hooper admitted to police that he had used Prazniak's apartment to smoke crack cocaine, but he denied involvement in the murder.

---

[1]     We limit our discussion of the facts to those directly relevant to this appeal. The facts are provided in further detail in *Hooper I*, 620 N.W.2d at 33-38, *Hooper II*, 680 N.W.2d at 91-92, and *Hooper III*, 838 N.W.2d at 778-80.

At Hooper's trial, four witnesses—C.K., C.B., L.J., and L.F.—testified that Hooper confessed to the murder. L.F. also testified that Hooper admitted to being in Prazniak's apartment, was nonchalant regarding Prazniak's murder, and said he was "hiding out." In addition to the confession witnesses, C.L. testified that, on the night of the murder, Hooper offered her drugs to be his lookout at Prazniak's apartment. C.L. heard a female voice cry "help" and left the building. Hooper then followed C.L. outside and told C.L. that she was going to be a lookout. Once inside the apartment, Hooper told C.L. to tear off strips of beige packing tape, which Hooper took into the bedroom. Later, Hooper told C.L. to clean up the apartment. Hooper used drugs and threats to obtain C.L.'s compliance with his demands and to ensure her silence afterwards. While she was cleaning, C.L. noticed a knife wedged between the door and the doorjamb of Prazniak's closet. Hooper told her not to open the closet door. C.L. also saw Christmas lights on the floor of Prazniak's bedroom.

The jury heard extensive impeachment of C.L., C.K., C.B., L.J., and L.F., including the fact that L.F. had implicated Hooper falsely in another murder and had given inconsistent versions of Hooper's confession. Nonetheless, the jury found Hooper guilty of three counts of first-degree murder, Minn. Stat. § 609.185 (a)(1), (3) (2014), and the district court imposed three concurrent life sentences.

On December 28, 2000, we affirmed Hooper's convictions and the denial of his first postconviction petition, holding that the evidence was sufficient to support Hooper's convictions and corroborate C.L.'s alleged accomplice testimony. *Hooper I*, 620 N.W.2d at 41. Specifically, we held that C.L.'s testimony was corroborated by Hooper's

3

fingerprints, the beige packing tape, and the Christmas lights found in Prazniak's apartment; the testimony of the four witnesses to whom Hooper confessed; and Hooper's admission that he had used Prazniak's apartment. *Id.* at 39-40. We noted that "a theory that [C.L.] was an accomplice . . . [is] irrelevant to the issue of [Hooper]'s own guilt." *Id.* at 41.

Hooper's second petition alleged, among other things, that witnesses C.K. and C.B. recanted their testimony that Hooper confessed to the murder. *Hooper II*, 680 N.W.2d at 91, 94. On May 27, 2004, we held that C.K.'s act of nodding his head in response to the assertion that his testimony "must not have been true" was not a recantation and that Hooper failed to show that he was entitled to relief based on C.B.'s recantation. *Id.* at 94-96.

Hooper's third petition again relied on the C.K. and C.B. recantations, provided new affidavits for C.K.'s recantation, and alleged a third recantation of L.J. *Hooper III*, 838 N.W.2d at 779-80. On October 30, 2013, we held that Hooper's attempt to relitigate the C.K. and C.B. recantations was procedurally barred under *Knaffla*, 309 Minn. at 252, 243 N.W.2d at 741, and that the postconviction court did not err by determining after a hearing that L.J.'s recantation was not credible. *Hooper III*, 838 N.W.2d at 784-85, 787-89.

Hooper filed this fourth petition on July 16, 2015, alleging that the final confession witness, L.F., recanted her testimony that Hooper confessed to the murder. L.F.'s affidavit states that she lied about Hooper's confession in the hope of receiving reward money. Specifically, L.F. said that although Hooper told her about being present in Prazniak's apartment, Hooper never specifically stated that he killed someone. Hooper also provided

4

affidavits from investigators who stated that they sought L.F. on Hooper's behalf from 1999 to 2000 and from 2008 to 2011. In 2011, an investigator found L.F. and spoke to her, but she appeared to be using drugs and was unwilling to recant. In 2013, the investigator finally obtained L.F.'s recantation during an interview in which L.F. discussed her recent sobriety and expressed remorse for lying about the confession.[2] Hooper argued that this fourth recantation, corroborated by the three previously raised recantations and the unreliability of C.L.'s alleged accomplice testimony, establishes that he is entitled to a new trial. The postconviction court summarily denied relief, holding that Hooper's petition was untimely under Minn. Stat. § 590.01, subd. 4, and that Hooper's previously raised recantation claims are *Knaffla*-barred. This appeal followed.

II.

"A petition for postconviction relief is a collateral attack on a conviction that carries a presumption of regularity." *Hummel v. State*, 617 N.W.2d 561, 563 (Minn. 2000). We will uphold a postconviction court's decision absent an abuse of discretion. *Riley v. State*, 819 N.W.2d 162, 167 (Minn. 2012). "[W]e review the postconviction court's legal conclusions de novo and its findings of fact for clear error." *Greer v. State*, 836 N.W.2d 520, 522 (Minn. 2013) (citations omitted). The postconviction court may summarily deny a petition without holding a hearing if the petition, files, and records conclusively show that the petitioner is not entitled to relief. Minn. Stat. § 590.04, subd. 1 (2014); *see also Bobo v. State*, 820 N.W.2d 511, 517 (Minn. 2012). Accordingly, the postconviction court

---

[2]     Hooper's counsel also states that Hooper waited to file his petition until 2015 because he was seeking C.L.'s recantation.

5

"may summarily deny a [petition] that is untimely . . . or procedurally barred." *Colbert v. State*, 870 N.W.2d 616, 622 (Minn. 2015). In deciding whether to summarily deny a petition, the postconviction court must presume that the facts alleged in the petition are true. *Bobo*, 820 N.W.2d at 517.

The postconviction court determined that Hooper's fourth petition was untimely. A petition for postconviction relief is subject to a 2-year statute of limitations. Minn. Stat. § 590.01, subd. 4(a). For petitioners such as Hooper whose convictions became final before August 1, 2005, the deadline for filing a petition for postconviction relief was July 31, 2007. *See* Act of June 2, 2005, ch. 136, art. 14, § 13, 2005 Minn. Laws 901, 1097-98. Hooper filed this petition on July 16, 2015, nearly 8 years after this deadline. Hooper's petition is therefore untimely unless he establishes an exception to the statute of limitations, as set forth in Minn. Stat. § 590.01, subd. 4(b).

Hooper argues that his petition satisfies both the newly discovered evidence and interests-of-justice exceptions. Under these exceptions, Hooper must file his petition "within two years of the date the claim arises." Minn. Stat. § 590.01, subd. 4(c). A claim arises when the petitioner objectively "knew or should have known that he had a claim," and we will not overturn the postconviction court's finding on the timing of a claim unless it is clearly erroneous. *Bolstad v. State*, 878 N.W.2d 493, 496-97 (Minn. 2016) (quoting *Sanchez v. State*, 816 N.W.2d 550, 560 (Minn. 2012)).

## A.

First, Hooper argues that L.F.'s recantation is newly discovered evidence. *See* Minn. Stat. § 590.01, subd. 4(b)(2). The postconviction court found that Hooper knew or should have known at trial that L.F.'s confession testimony was false, and therefore Hooper's claim did not present newly discovered evidence. This finding is not clearly erroneous. If Hooper did not confess to L.F., he knew that L.F. was testifying falsely when she told the jury that Hooper had confessed to her. Hooper therefore fails to satisfy the first requirement of the exception: that the petitioner "allege[] the existence of newly discovered evidence." *Id.*

## B.

Second, Hooper argues that his petition satisfies the interests-of-justice exception because it is "not frivolous and is in the interests of justice." *Id.*, subd. 4(b)(5). The interests-of-justice exception is available only in rare and exceptional situations. *Carlton v. State*, 816 N.W.2d 590, 607 (Minn. 2012). The claim must relate to an injustice that delayed the filing of the petition, not to the substantive merit of the petition. *Sanchez*, 816 N.W.2d at 557.

Hooper maintains that his inability to procure L.F.'s recantation before 2013 justifies his delay in raising this claim. We disagree. As explained above, to satisfy the interests-of-justice exception, Hooper must allege an injustice that caused the delay in filing the petition. *Id.*; *see also Rickert v. State*, 795 N.W.2d 236 (Minn. 2011) (holding that the interests-of justice-exception was satisfied when, despite defense counsel's timely request for a transcript of the district court proceedings, the transcript was not delivered

7

until 2 business days before the statute of limitations expired). Here, Hooper searched for L.F. from 1999 to 2000 and then from 2008 to 2011. In light of the 7-year gap in investigative efforts between 2000 and 2007, we cannot say that the postconviction court abused its discretion by concluding that Hooper failed to exercise due diligence in seeking L.F.'s recantation. Such a failure does not satisfy the interests-of-justice exception.

Hooper also argues that the interests of justice require review of his petition because the recantation of L.F., corroborated by the recantations of C.B., C.K., and L.J. and the unreliability of C.L.'s alleged accomplice testimony, establish that he is entitled to a new trial. *See Ferguson v. State*, 645 N.W.2d 437, 442 (Minn. 2002) (stating requirements for a new trial based on false testimony). This argument does not establish a valid interests-of-justice claim, however, because it relates to the merits of Hooper's petition rather than the reason for the delay. *See Sanchez*, 816 N.W.2d at 557. Because Hooper's petition was untimely and fails to satisfy an exception to the 2-year statute of limitations, the postconviction court did not err by summarily denying Hooper's petition.

### III.

Hooper does not dispute that his previously raised claims are also subject to the procedural bar announced in *Knaffla*, 309 Minn. at 252, 243 N.W.2d at 741. Under the *Knaffla* rule, a postconviction claim that was raised, known, or should have been known at the time of the petitioner's direct appeal will not be considered in a subsequent postconviction petition. *Id.*; *see also Powers v. State*, 731 N.W.2d 499, 501 (Minn. 2007) (holding that the *Knaffla* rule also applies to claims raised or known at the time of earlier postconviction petitions). Hooper re-asserts his claims based on the recantations of C.K.,

C.B., and L.J., as well as his claim that C.L.'s testimony was not reliable. We have already held, however, that Hooper's claims based on the recantations of C.K. and C.B. were *Knaffla*-barred. *Hooper III*, 838 N.W.2d at 788. We have also already upheld the postconviction court's determination after a hearing that L.J.'s recantation was not credible. *Id.* at 785. Finally, we have already examined the testimony of C.L. and concluded that "a theory that [C.L.] was an accomplice . . . [is] irrelevant to the issue of [Hooper]'s own guilt." *Hooper I*, 620 N.W.2d at 41.

Hooper argues that the interests of justice require an exception to the *Knaffla* rule because the recantations, considered together, establish his innocence.[3] *See Hooper III*, 838 N.W.2d at 787; *see also Torres v. State*, 688 N.W.2d 569, 572 (Minn. 2004) (stating that the *Knaffla* rule "preserves the goals of finality and efficiency where appropriate and overrides them only where necessary in the interests of justice"). The interests-of-justice exception to the *Knaffla* rule applies only if Hooper's claim has "substantive merit" and he "did not deliberately and inexcusably fail to raise the [claim]" in his previous appeals. *Deegan v. State*, 711 N.W.2d 89, 94 (Minn. 2006) (quoting *Fox v. State*, 474 N.W.2d 821, 825 (Minn. 1991)). The postconviction court held that Hooper was not entitled to invoke the interests-of-justice exception to the *Knaffla* rule because his claim lacked substantive

---

[3] Hooper argues that in *Hooper III*, we did not foreclose him from including previously raised recantations in a future petition to corroborate new claims under the interests-of-justice exception to the *Knaffla* rule. Specifically, we stated in *Hooper III* that Hooper's corroboration argument was "not frivolous." 838 N.W.2d at 788. Although Hooper's corroboration argument may not be frivolous under certain circumstances, it lacks merit here. As explained above, Hooper fails to show that he is entitled to relief even under a corroboration theory.

merit. Specifically, the postconviction court found that, even without all of the allegedly recanted confession testimony, there remained compelling evidence of Hooper's guilt. We agree.

To establish that he is entitled to a new trial, Hooper must show that, "without the false testimony, the jury might have reached a different conclusion." *Ferguson*, 645 N.W.2d at 442; *see also Doppler v. State*, 771 N.W.2d 867, 872-73 (Minn. 2009) (holding that a petitioner failed to satisfy this requirement where a non-eyewitness recanted his testimony, but petitioner's confession along with other eyewitness testimony remained). Even without the confession testimony of C.K., C.B., and L.F., the strength of the remaining evidence of Hooper's guilt indicates that the jury would not have reached a different conclusion. The remaining evidence includes Hooper's confession to using Prazniak's apartment; Hooper's fingerprints found in the apartment; C.L.'s alleged accomplice testimony, which was corroborated by the beige packing tape and Christmas lights found in the apartment and used to bind Prazniak's body; and L.J.'s testimony that Hooper confessed to the murder.[4] Further, L.F. recanted only her testimony that Hooper confessed,[5] and her unrecanted testimony—that Hooper admitted to being in Prazniak's

---

[4] L.J.'s confession testimony is included because the postconviction court found his recantation to be incredible after an evidentiary hearing, and we affirmed. *Hooper III*, 838 N.W.2d at 785.

[5] Hooper argues that the postconviction court took an "overly formalistic view" of L.F.'s recantation when it found that L.F. recanted only her testimony that Hooper confessed to murder. *See Caldwell v. State*, 853 N.W.2d 766, 774 (Minn. 2014) (deeming "overly formalistic" the view that a recantation must explicitly state that the witness lied). The postconviction court did not abuse its discretion here, however, because L.F.'s

10

apartment, said he was "hiding out," and was nonchalant regarding Prazniak's murder—still incriminates Hooper. Hooper's claim therefore lacks substantive merit, and he is not entitled to the interests-of-justice exception to the *Knaffla* rule.[6]

In sum, the postconviction court did not abuse its discretion by holding that Hooper's petition was untimely, and that his previously raised claims are *Knaffla*-barred. Accordingly, we affirm the postconviction court's summary denial of Hooper's fourth petition.

Affirmed.


LILLEHAUG, J., took no part in the consideration or decision of this case.

---

affidavit recanted only her confession testimony, and indeed reaffirmed that Hooper and L.F. discussed Hooper's presence in Prazniak's apartment.

[6] Because we conclude that Hooper's claims do not satisfy the interests-of-justice exception to the *Knaffla* rule, we decline to decide whether the Legislature intended to incorporate an interests-of justice-exception into the procedural bar set forth in Minn. Stat. § 590.01, subd. 1 (2014), which simply provides that "[a] petition for postconviction relief after a direct appeal has been completed may not be based on grounds that could have been raised on direct appeal of the conviction or sentence."