*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0582**

Kenneth Jerome Brunner, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed January 17, 2017
Affirmed
Bratvold, Judge**

Dakota County District Court
File No. 19HA-CR-11-3386

Cathryn Middlebrook, Chief Appellate Public Defender, Sara J. Euteneuer, Assistant State Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

James C. Backstrom, Dakota County Attorney, Elizabeth M. Swank, Assistant County Attorney, Hastings, Minnesota (for respondent)

Considered and decided by Worke, Presiding Judge; Cleary, Chief Judge; and Bratvold, Judge.

**U N P U B L I S H E D   O P I N I O N**

**BRATVOLD**, Judge

Appellant challenges the district court's denial of his postconviction petition as untimely. Because the district court did not abuse its discretion in denying appellant's

petition as untimely and the interests-of-justice exception does not apply to save appellant's petition, we affirm.

**FACTS**

On February 17, 2012, after a three-day jury trial, the jury found appellant Kenneth Brunner guilty of three counts of first-degree criminal sexual conduct. The relevant evidence established that K.T. and Brunner started dating soon after they met in March 2011, dated for four to six weeks, and then ended their relationship. K.T. and Brunner remained friends after the breakup, and about one to three times per month they would watch television together in K.T.'s apartment. Sometimes Brunner would sleep over, either on the floor or on the couch, while K.T. slept in her bedroom.

On September 20, 2011, Brunner went to K.T.'s apartment. They watched television and K.T. went to bed around 11:30 p.m. K.T. was awakened by Brunner getting into her bed. Brunner restrained K.T. with his arms and legs. After K.T. repeatedly asked Brunner to leave, he returned to the living room. Brunner later reentered K.T.'s bedroom, grabbed her by the shoulders, put a leather belt around her neck, pulled up her nightshirt, moved her underwear aside, and penetrated her. K.T. testified that Brunner "pulled the belt so tight [she] couldn't breathe." K.T. also testified that, after Brunner ejaculated, he remained in K.T.'s bed as if "nothing had gone wrong" and as if they "had just made love." K.T. testified repeatedly that Brunner "raped, "brutally raped," and "date raped" her.

Around 2:00 a.m., K.T. called the police to report that she had been raped. Police responded, but Brunner had fled. The officer testified that when he arrived at K.T.'s

2

apartment, she appeared "visibly upset, shaken, [and] kind of distraught." K.T. told the officer that Brunner "raped" and "penetrated" her.

After speaking with the officer, K.T. was taken to the hospital for an examination by a sexual assault nurse, who testified that she observed "multiple lacerations" in K.T.'s vaginal area that were likely the result of "blunt force trauma." The nurse also testified that K.T. told her Brunner sexually assaulted and penetrated her.

The state also presented testimony from several forensic scientists who analyzed DNA taken from K.T.'s vaginal area after the assault. They were unable to conclude that Brunner's DNA matched the DNA on the vaginal swabs. According to one expert, there was a Y-chromosome match between one of the swabs and Brunner's DNA, but the expert could not scientifically exclude other males who have the same Y-chromosomal profile as Brunner.

After the jury found Brunner guilty, the district court sentenced him to 200 months in prison on April 25, 2012. After pronouncing Brunner's sentence, the district court did not tell Brunner he had a right to appeal with the assistance of a public defender, as required by Minn. R. Crim. P. 27.03, subd. 5. The appellate process, however, was expressly discussed during the sentencing hearing. Brunner personally addressed the district court and argued that his convictions should be vacated because the state had relied on improper evidence. In response, the district court twice told Brunner that he could pursue his argument in an appeal or a postconviction petition. Brunner's attorney also stated that she would discuss with Brunner the possibility of filing an appeal or postconviction petition after the sentencing hearing.

Brunner did not directly appeal his conviction or sentence. He filed his first petition for postconviction relief on August 26, 2015, after the expiration of the two-year period for filing a postconviction petition. In Brunner's petition, he sought reversal of his convictions because the state's evidence was insufficient to prove beyond a reasonable doubt that he sexually penetrated K.T. Brunner did not request an evidentiary hearing.

Brunner argued that his petition should be considered in the interests of justice because the sentencing court did not expressly tell him he had a right to appeal, as required by rule 27.03, subdivision 5. In a sworn affidavit filed with his petition, Brunner asserted that he first learned about his right to appeal on January 27, 2015, when he contacted the public defender's office seeking to challenge his conviction. Brunner argued that, because he filed his petition within two years of January 27, 2015, his petition was timely under the interests-of-justice exception.

The postconviction court denied Brunner's postconviction petition, concluding that the sentencing court's failure to follow rule 27.03, subdivision 5, did not toll the time period for filing a postconviction petition. The postconviction court did not reach the merits of Brunner's insufficient-evidence claim. This appeal follows.

## D E C I S I O N

A district court's denial of a petition for postconviction relief is reviewed for an abuse of discretion. *Riley v. State*, 819 N.W.2d 162, 167 (Minn. 2012). "A postconviction court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *Id.* (quotation omitted). A decision will not be reversed "unless the postconviction court exercised its discretion in an arbitrary or

4

capricious manner, based its ruling on an erroneous view of the law, or made clearly erroneous factual findings." *Matakis v. State*, 862 N.W.2d 33, 36 (Minn. 2015) (quotation omitted).

**I.      Brunner's postconviction petition is untimely.**

Petitions for postconviction relief must be filed within two years of the later of "(1) the entry of judgment of conviction or sentence if no direct appeal is filed; or (2) an appellate court's disposition of petitioner's direct appeal." Minn. Stat. § 590.01, subd. 4(a) (2014). A petition filed after the two-year deadline may be considered if certain exceptions apply. *Id.*, subd. 4(b) (2014). Brunner filed his postconviction petition on August 26, 2015. Because he did not file a direct appeal, he was required to file his petition within two years of the April 25, 2012 sentencing. *Id.*, subd. 4(a). Thus, we agree with the postconviction court that, unless an exception applies, Brunner's petition is untimely because it was filed more than two years after sentencing.

Even if an exception applies to Brunner's petition, there is still a deadline. A petition that invokes an exception "must be filed within two years of the date the claim arises." *Id.*, subd. 4(c) (2014). Brunner argues that the postconviction court should have considered his petition under the interests-of-justice exception. A claim under the interests-of-justice exception "arises on the date of an event that establishes a right to relief in the interests of justice." *Bee Yang v. State*, 805 N.W.2d 921, 925 (Minn. App. 2011), *review denied* (Minn. Aug. 7, 2012). The date on which the claim "arises" is determined objectively based on when the petitioner "knew or should have known" that the claim existed, not when the petitioner subjectively knew about the claim. *Sanchez v. State*, 816 N.W.2d 550, 558–60

5

(Minn. 2012). "A postconviction court's determination of when a petitioner knew or should have known about his or her claim is reviewed under a clearly erroneous standard." *Bolstad v. State*, 878 N.W.2d 493, 497 (Minn. 2016).

Brunner argues that the sentencing court's failure to follow rule 27.03 and tell him about his right to appeal is the reason he missed the two-year deadline for filing a postconviction petition. Thus, Brunner contends that his petition is timely under the interests-of-justice exception because his claim "arose" on January 27, 2015, the day he contacted the public defender's office, and he filed his petition within two years of January 27, 2015. The state responds that Brunner's petition is untimely because he knew or should have known of his right to appeal no later than his sentencing hearing.

Initially, we note that the parties agree the sentencing count did not follow the applicable rules at Brunner's sentencing. Minnesota Rule of Criminal Procedure 27.03, subdivision 5, provides: "After sentencing, the court must tell the defendant of the right to appeal both the conviction and sentence, and, if eligible, of the right to appeal at state expense by contacting the state public defender." Here, the sentencing court did not expressly tell Brunner after sentencing that he had a right to appeal with the assistance of a public defender.

The postconviction court determined that noncompliance with rule 27.03 did not toll the two-year deadline for filing a postconviction petition and relied on an unpublished decision of this court. In *Erickson v. State*, this court stated that, "even if the district court failed to inform appellant of her right to appeal, such an error should not be viewed as extending the time for appeal." No. A04-2248, 2005 WL 2354788, at *2 (Minn. App.

6

Sept. 27, 2005).[1] *Erickson* cited a comment to rule 27, which stated: "Failure to notify the defendant of the right to appeal does not extend the time for appeal." Minn. R. Crim. P. 27, 2005 cmt.; *Erickson*, 2005 WL 2354788, at *2. *Erickson* was decided in 2005, but the comment was removed in 2010. We conclude that *Erickson* is not persuasive.

In any event, the postconviction court's decision has other support. As described above, the interests-of-justice claim arises, triggering the two-year time period, when the defendant objectively knew or should have known of the claim. *Sanchez*, 816 N.W.2d at 558–60.[2] Therefore, Brunner's focus on when he subjectively learned of his right to appeal is misplaced. The dispositive issue is when Brunner *should have* known of his right to appeal. The postconviction court did not make express findings on this issue. But there is undisputed record evidence that Brunner should have known no later than the April 25, 2012 sentencing hearing that he could challenge his conviction on appeal. At the sentencing hearing, Brunner argued that he was wrongfully convicted, and the sentencing court twice told Brunner that he could pursue an appeal or postconviction petition. Brunner's trial

---

[1] Unpublished decisions are not precedent. Minn. Stat. § 480A.08, subd. 3 (2016); *Vlahos v. R&I Constr. of Bloomington, Inc.*, 676 N.W.2d 672, 676 (Minn. 2004) ("[U]npublished opinions of the court of appeals are not precedential . . . [and] should not be cited by the district courts as binding precedent."). Unpublished decisions may be cited only for their "persuasive value." *Dynamic Air, Inc. v. Bloch*, 502 N.W.2d 796, 800–01 (Minn. App. 1993).

[2] When the Minnesota Supreme Court adopted this objective standard in 2012, it borrowed from other caselaw applying an objective standard for assessing when the statute of limitations is tolled. *See Sanchez*, 816 N.W.2d at 558–60 (citing *Wild v. Rarig*, 302 Minn. 419, 449–50, 234 N.W.2d 775, 794–95 (1975)). The supreme court recently declined to change the objective standard to a subjective one. *Bolstad*, 878 N.W.2d at 497 ("We have repeatedly declined to apply a subjective standard to the interests-of-justice exception [and] we decline Bolstad's invitation to adopt a subjective standard to measure the accrual of a claim under the interests-of-justice exception.").

7

attorney also said that she would speak with Brunner about a possible appeal or postconviction petition. While these statements about Brunner filing an appeal did not comply with rule 27.03's requirements, the statements nonetheless establish when Brunner objectively should have known about his right to appeal.

Moreover, Brunner should have known he had a challenge to the sufficiency of the evidence because this was his defense at trial. Brunner's counsel argued in closing that there was insufficient evidence proving Brunner sexually penetrated K.T. *See, e.g.*, *Bolstad*, 878 N.W.2d at 497 (holding that the postconviction court did not clearly err in finding that the defendant knew or should have known of his jury-instruction claim at trial because the defendant's counsel objected to the instruction at trial).

Brunner's interests-of-justice claim, therefore, arose no later than his sentencing hearing because that is when he should have known of his right to appeal and his challenge to the sufficiency of the evidence. Accordingly, we conclude the postconviction court did not abuse its discretion in denying Brunner's petition as untimely.

## II. The interests-of-justice exception does not save Brunner's petition because he fails to satisfy the exception's requirements.

Alternatively, if we assume that Brunner's interests-of-justice claim arose on January 27, 2015, the day he spoke to the public defender's office, then we must consider whether Brunner's petition meets the interests-of-justice exception's two requirements. First, the claim must not be frivolous. Second, hearing the claim must be in the interests of justice. Minn. Stat. § 590.01, subd. 4(b)(5). If a petitioner cannot meet both requirements, the petition is time-barred. *Wallace v. State*, 820 N.W.2d 843, 849 (Minn. 2012).

Brunner's petition fails on the second requirement and, therefore, we do not consider whether his claim is frivolous. Courts hear untimely petitions in the interests of justice in "exceptional and extraordinary situations." *Carlton v. State*, 816 N.W.2d 590, 607 (Minn. 2012) (quotation omitted). To determine whether hearing a claim is in the interests of justice, courts consider a list of five nonexhaustive factors:

> (1) whether the claim has substantive merit; (2) whether the defendant deliberately and inexcusably failed to raise the issue on direct appeal; (3) whether the party alleging error is at fault for that error and the degree of fault assigned to the party defending the alleged error; (4) whether some fundamental unfairness to the defendant needs to be addressed; and (5) whether application of the interests-of-justice analysis is necessary to protect the fairness, integrity, or public reputation of judicial proceedings.

*Id.* These factors do not form a "rigid" test, and "courts are not required to examine each [] factor in every case asserting the interests-of-justice exception." *Id.* at 608.

We conclude that Brunner's claim lacks substantive merit and that the integrity and fairness of the judicial process do not require that we consider his claim in the interests of justice. Brunner challenges the sufficiency of the state's evidence of sexual penetration. First-degree criminal sexual conduct requires the state to prove that the defendant "engage[d] in sexual penetration with" the victim. Minn. Stat. § 609.342, subd. 1 (2010). "Sexual penetration" is defined as sexual intercourse or "any intrusion however slight into the genital or anal openings of the complainant's body." Minn. Stat. § 609.341, subd. 12 (2010). In first-degree criminal sexual conduct cases, "the testimony of a victim need not be corroborated." Minn. Stat. § 609.347, subd. 1 (2010). Minnesota courts have consistently applied this statute. *See State v. Berrios*, 788 N.W.2d 135, 141 (Minn. App.

2010) (the victim's "testimony alone is sufficient evidence to prove" sexual penetration), *review denied* (Minn. Nov. 16, 2010); *see also State v. Fields*, 730 N.W.2d 777, 785 (Minn. 2007) (holding that the district court accurately instructed the jury that the victim's testimony need not be corroborated). Moreover, "a conviction may be based on a single person's testimony." *State v. Cao*, 788 N.W.2d 710, 717 (Minn. 2010).

Brunner argues that K.T. provided "no specific testimony or evidence [] regarding where he sexually penetrated her or the means with which he did so." Brunner's argument is contrary to caselaw. In *State v. Steinbrink*, the Minnesota Supreme Court held that "proof of penetration need not be in any particular form of words, and there are many cases saying that testimony by a complainant that the accused had 'sexual intercourse' or 'intercourse' with her or 'raped' her is sufficient, if believed, to establish penetration." 297 N.W.2d 291, 292 (Minn. 1980) (citation omitted). Contrary to Brunner's argument, K.T.'s testimony alone was sufficient evidence to affirm Brunner's convictions. K.T. testified that Brunner "raped," "brutally raped," and "date raped" her. She specifically recounted that Brunner put a belt tightly around her neck, pulled up her nightshirt, moved her underwear aside, and "penetrated [her]."

Additionally, the state presented direct and circumstantial evidence corroborating K.T.'s testimony, even though it did not need to do so. First, the testimony by the sexual assault nurse and forensic scientist corroborated K.T.'s testimony of penetration. Although the DNA match did not exclude other males who have the same Y-chromosomal profile as Brunner, when viewed in the light most favorable to the verdict, this evidence supports the jury verdict. Second, K.T.'s prior consistent statements support the jury's verdict. *State v.*

*Wright*, 679 N.W.2d 186, 190 (Minn. App. 2004), *review denied* (Minn. June 29, 2004). Third, K.T.'s demeanor and emotional condition soon after the assault corroborates her testimony. *State v. Reinke*, 343 N.W.2d 660, 662 (Minn. 1984). Fourth, "[a] prompt complaint by a victim is corroborative evidence of a rape." *State v. Johnson*, 679 N.W.2d 378, 387 (Minn. App. 2004), *review denied* (Minn. Aug. 17, 2004). Lastly, K.T. testified that Brunner ejaculated after the assault. Although not conclusive evidence that he penetrated K.T., Brunner's ejaculation is circumstantial evidence, which, when viewed in the light most favorable to the verdict, supports the jury's verdict. *See State v. Morales*, 324 N.W.2d 374, 376 (Minn. 1982) (holding that the victim's testimony, medical testimony, and the fact that the defendant ejaculated supported the jury's conclusion that "penetration in fact occurred").

K.T.'s testimony together with other direct and circumstantial evidence of sexual penetration are more than sufficient to support the jury's verdict. We therefore conclude that Brunner's claim lacks substantive merit. Additionally, because the evidence of Brunner's guilt was overwhelming, the fairness and integrity of the judicial system does not require us to apply the interests-of-justice exception. *See Gassler v. State*, 787 N.W.2d 575, 587 (Minn. 2010) (holding that the integrity of the judicial process did not require review in the interests of justice because "there was substantial admissible evidence of [defendant's] guilt admitted at trial").

11

For the reasons discussed, the district court did not abuse its discretion in denying Brunner's postconviction petition as untimely. We additionally conclude that Brunner's postconviction petition does not meet the requirements of the interests-of-justice exception.

**Affirmed.**